Opinion of
the Court.
THIS is an appeal taken by the defendants in chancery from a decree directing them to convey to the complainants the legal title of the land which is the subject of controversy, and to which the complainants assert their right in equity, in virtue of an entry for eight hundred acres made the 31st of March, 1784, in the names of William Hord and Waller Overton.
We have but little doubt that this entry is valid, and the entry under which the defendants claim, though el *511 der than that of the complainants, is wholly unsupported by testimony.
We have no evidence that the English chancellors ever considered the limitation, as respects writs of right, a rule to be adopted by them.
We have abundant evidence that they did adopt the 20 years limitation act of James I, and made it a general rule.
An entry for land is not a legal right to lands; it is emphatically equitable, depending on an executory contract with the government, and to be considered in a similar light with executory contracts with individuals.
The inception of title is the making the entry, not the execution of the survey oil it; consequently, it will not avail a complainant an equity, that his survey was made within twenty years before the commencement of his suit.
*511 But the defendants allege and prove, that they have been in the continued possession of the land in controversy, for more than twenty years before the commencement of this suit, claiming under a patent which issued prior to the time when they took possession; and they plead and rely upon the lapse of time as a bar to the relief sought by the complainants.
Whether twenty years’ adverse possession is sufficient to preclude relief, in a case of this sort, has been frequently the subject of discussion before this court; but no occasion has hitherto occurred, in which it was thought necessary to decide the question.
It presents itself, however, in this case, in a shape in which we conceive a decision of it is unavoidable.
That there should be some limitation of time, beyond which the title of a man in possession should not be called in question, is indisputable. To make land the subject of illimitable litigation, would render titles insecure, disturb the repose of society, and retard the progress of improvement. Expedit rei publicae est sit finis litium, is a maxim founded, therefore, in the best reason and dictated by the soundest policy.
Courts of equity have accordingly, from their first institution, discountenanced stale claims, and have always refused their aid to those who have supinely or negligently slept upon their titles. Whether there was any precise and imperative rule of limitation established by those courts, prior to the statute of James I. usually denominated the statute of limitations, is difficult to be ascertained. It is probable, indeed, that anterior to that time, each case was, in that respect, as it certainly was in many others, subject to the discretion of the chancellor. For although the statute of 32d Hen. VIII. which limits the time of bringing writs of right to sixty years, had long been in existence, courts of equity seem never to have adopted the limitation prescribed by that statute, as a rule of decision; and they did not do so, probably because the time prescribed by that statute, was thought by the chancellor to be beyond what was reasonable to be allowed, for the assertion of an equitable title. As soon, however, as the statute of limitations of James I. was made, courts of equity eagerly adopted the limitations it prescribed, and it has, consequently, *512 long since become the settled rule of decisions in those courts. And as that statute has limited the time of making an entry upon land to twenty years after the right of entry accrues, subject to the exceptions contained in the statute, so courts of equity have invariably refused to sustain an equitable title, where the cause of action accrued more than twenty years before suit brought, subject to the like exceptions. Courts of equity, it is true, do not suppose themselves within the letter of the statute, for in terms, the statute only applies to legal remedies; but they consider themselves within the reason and spirit of its provisions, and, consequently, when acting upon legal rights, they decide in obedience to the statute, and when acting upon equitable rights, they adopt by imitation or analogy, the rule of limitation which the statute prescribes. For, in the language of one of the English chancellors, "when the legislature has fixed the time at law, it would have been preposterous for equity, which, by its own proper authority, always maintained a limitation, to counter nance laches beyond the period that law had been con fined to by parliament; and, therefore, in all cases where the legal right has been barred by parliament, the equitable title to the same thing has been concluded by the same bar"-Sug. Ven. 264.
It is upon this principle that the mortgager is not permitted to redeem after the mortgagee has been twenty years in possession-2 Fonb. Eq. 265; and the same principle equally applies to every case of an equitable title. Hence, the rule is laid down in broad and general terms, that equity will never disturb a man who has been twenty years in possession, with the legal title-2 Equity Cas. Abr. title" Length of Time."
This general rule is explicitly recognized by Lord Reddesdale, in an able opinion in which he reviews the various cases upon this subject. "I think he, says " the rule has been so laid down, that every new right of action in equity that accrues to the party, whatever it may be, must be acted upon at the utmost, within twenty years. Thus, in case of redemption of a mortgage, if the mortgagee has been in possession for a great length of time, but has acknowledged the possession was as mortgagee, and, therefore, liable to redemption, a right of action accrues upon that acknowledgment; but if not pursued within twenty years, it is like the the *513 case at law, of a promise of payment beyond the six years and non assumpsit intra sex annos pleaded, and so in every case of an equitable title, (not being the case of a trustee, whose possession is consistent with the title of the claimant,) it must be prosecuted within twenty years after the title accrues.”
But it has been contended, that the right acquired under an entry with the surveyor, is a legal right, and that a suit in chancery, as it tries the right of property and hot the mere right of possession, assimilates itself to the writ of right, and should be governed by the same limitation which is prescribed for bringing a writ of right.
Were it conceded, as is supposed by this argument, that the right acquired by an entry was a legal one, it would not follow, that the limitation for bringing a writ of right should govern the decision in this case; for it is settled, that no person can maintain a writ of right but upon the possession of himself or of his ancestor, within the time prescribed for bringing the writ; and it is not pretended, that the complainants or either of them, or their ancestor, ever were in possession, so that if their right were a legal one, and of a character to be tried at law, the only remedy they could have, would be such as is founded upon their right of entry, which would be tolled by the adverse possession of the defendants for twenty years; and as the law, in such case, would afford them no remedy, equity ought not, on the principles of analogy, to do so.
But we affirm, without hesitation, that the right acquired by virtue of an entry for land, is not a legal, but an equitable right. It may, indeed, as contrasted with an illegal right, be said to be a legal one, and so may every equitable title; but in the sense in which a legal title is contradistinguished from an equitable right, it possesses no one attribute of the former, and every one which appertains to the latter. “ It affords no legal remedy; it cannot even be noticed on a trial at law, and is peculiarly and exclusively cognizable in a court of equity.”
This was so ruled at the origin of controversies of this sort, and has ever since been undeviatingly maintained by the courts of this country. What sort of a legal right then, is that which cannot be noticed on a trial at law, and which is exclusively the subject of the *514 jurisdiction of a court of equity? The only reason we have ever heard assigned, in support of the position that the right acquired by an entry is a legal one, is, because it was created by statute; but surely a statute may create an equitable as well as a legal right. It is not, however, strictly true, that the right was created by statute. The statute only authorized individuals to acquire the right, and created the means by which they were to do so; and the right must, therefore, necessarily be of the same nature of every other right similarly situated, acquired by an individual through any other legal means. Where the title of the commonwealth is granted by statute, the grantee, no doubt, becomes thereby vested with the legal title. But the act of 1779, under which the right in question in this case was derived, did not, itself, pass the title of the commonwealth. It only authorized the functionaries of the government to sell its vacant lands, and after certain preliminaries were performed, to convey the right of the commonwealth by grant or patent, to the purchaser. Until the patent issued, therefore, the contract was executory, and the right acquired by it, must be essentially of the same character of every other right, acquired in virtue of an executory contract, for the sale of lands. Thus, when a purchaser of a land warrant had made his entry with the surveyor, he acquired unequitable title to the land described in his entry, in the same manner as he would have done if he had made a contract for the purchase from an individual who had a right to sell; and if a subsequent locator obtained an elder grant, he would hold the legal title for him who had the prior equity, just as a second purchaser from an individual with notice of a prior purchase, would do; for the prior entry being of record, is presumptive notice to the elder patentee, and, therefore, he cannot plead that he is a purchaser without notice. This is the true ground of the jurisdiction of a court of equity in such a case, as was held by the supreme court of the United States, in the case of Bodly, &c. vs. Taylor, 5 Cranch 191; and as was observed by the court in that case, in all cases in which a court of equity takes jurisdiction, it will exercise that jurisdiction upon its own principles.
The right, then, acquired by an entry, is a mere equitable right, and like every other equitable right, must *515 be, as we have seen, barred by the lapse of time, if not prosecuted within twenty years after it has accrued.
But the survey of the complainants’ entry, was made within less than twenty years before the commencement of this suit, and it is urged, that the cause of action did not accrue until the survey was made. This would certainly be correct, if the survey gave the right; but it is the entry which gives the right, and the survey has no appropriate efficacy, as has been repeatedly adjudged by this court. It is, therefore, to the date of the entry, and not to the date of the survey, that the commencement of the right is constantly referred, in all controversies between conflicting claims of this sort. It is true, that the entry was liable to become void, if the survey was not made in the time prescribed by law; but until there was a failure to make the survey, the entry remained valid, and, of course, the right which depended upon it, continued to exist. And it would be preposterous to suppose, that there was a subsisting right, and that for a wrong done to that right, there was no remedy. Where the suit is brought after the time allowed by law for making surveys, it is doubtless necessary to allege, that the survey had been made in due time; for otherwise, it would not appear that the complainant had a subsisting right. But where the suit was brought before the time of surveying expired, no such allegation was necessary, to show that he had such right; for it resulted as a necessary consequence, from the general law of the land, that he had such right. It was, accordingly, the universal practice of the country, to sue upon entries, without regard to the circumstance whether the entries had been surveyed or not, and where the entry had not been surveyed there was no allegation to that effect, as may be seen by reference to the bills, filed by the ablest counsel in the state, in those cases, where suits were brought before the time of surveying expired.
Upon the whole, therefore, we are of opinion, that the lapse of time is a bar to the relief sought by the complainants in this case. An attempt is made by the evidence in the cause, to show that one of them, is within the saving of the statute of limitations; but they have not relied upon that matter, either in their bill or by a replication to the answer, and even if they could have availed themselves of it by making the appropriate al *516 legations in their pleadings, which is, however, extremely doubtful, it is evident that they cannot take advantage of it by evidence only, without any allegation to apprise the defendants of the point relied on.
Decree reversed.