Judge Hitceccook
delivered the opinion of the court:
Yarious reasons are assigned in favor of the motion for a new trial, which will be considered in the order presented. *
1. It is supposed the court erred in the rejection of the survey of John Tench.
Since the decision of the case of Lessee of Anderson v. Clark and Ellison, 1 Pet. 628, the question has been much litigated within the Yirginia military district, as to the nature of the interest which an individual acquires under a plat and survey, whether it be legal or equitable. Upon an examination of that case, I am not aware that any new light is thrown upon this subject. In fact, this question was not before the court for consideration. The defendants claimed to be protected in their possession under a survey in which they were interested, not because they held a legal estate, but because the location in virtue of which the plaintiff’s patent issued, had been made on land previously surveyed, and of course the patent was void undelr the act of Congress of March 2,1807. The great object was to defeat the plaintiff’s title,'for in that, as in every other case in ejectment, unless the plaintiff could show some kind of legal title, unless he could show a right of entry, the defendants were secure in their possession. The chief justice says, “ lands surveyed are as completely withdrawn as lands patented from subsequent taxation.” Again he says, “It maybe the defendants may never be able to .perfect their title. The land may not be subject to the disposition of Congress. It is enough for the present case to say, that, as we understand the act of Congress; it was not liable to location when the plaintiff’s entry was made.” These expressions are supposed to sustain the position that a plat and survey confer upon the owner a legal interest. It is true the lan *152 guage is strong, but it does not warrant the inference drawn from it. “Lands surveyed are as completely withdrawn as lands patented from subsequent location,” so long as the survey subsists, because by the proviso to the first section of the before-mentioned act of Congress, it is declared that no locations after the passage of that act shall *be made upon lands “for which patents had been previously issued, or which had been previously surveyed, and any patent which may nevertheless be obtained for land located contrary to the provisions of this section shall be null and void.”
It has been strenuously urged by the counsel for the plaintiff in the case before the court, and it is manifest that he is familiar .'with the subject, that a survey confers a legal interest. At least, that it confers such an interest as to give to the proprietor the right of entry. If it be true that a survey gives the right of entry, then the court were mistaken in rejecting the survey of Tench. That it does not give a legal estate, in fee, is admitted on all hands. There is much plausibility in the reasoning on this subject. All will admit that the owner of the survey has a better •right to the land than a stranger. His right is preferable to that •of all others except the government. But the same is the case with all equitable interest as between individuals. The person ¡holding a contract for lands has an interest in those lands superior to any interest in a stranger. Still it is not a legal interest. It ■is a mere equity. If the contract is complied with, on his part, •he can force the legal title from the other contracting party by a proceeding in chancery. But, until he obtains this legal title, we iave uniformly held that he could not sustain ejectment unless by •the terms of the contract he was authorized to take the possession. In such case, however, should the equitable claimant acquire the possession, and afterward be ousted by a stranger he might sustain ejectment. Not, however, on account of his equitable interest, but on account of his prior possession. The contract itself gives no legal right of entry unless so expressed upon its face. How does the case differ with respect to a plat and survey? If an entry is made in conformity to law — if the land is surveyed, and surveyed according to law and the survey recorded — then, upon •the production of the plat and survey, the proprietor is authorized to demand and receive a patent which conveys the legal title. Until the patent issues the legal title is in the government. The *153 law has prescribed the terms upon which it may be obtained; but that law, in no part of it, gives to the proprietor a right of entry so soon as the entry and survey is made. But so soon as that law, which constitutes the terms of the contract on the part of the governmet, is complied with, then the patent issues as a ^matter of course. So soon as it is complied with, the proprietor has a complete equitable interest, of which he can not be divested. And, as in ease of a contract between individuals, so here, if the equitable owner acquires possession he will be protected in that possession against a disseizer, and for the same reason.
Counsel have produced no decided case in which it has been held that the owner of a survey could sustain this action. If it had been so decided the case might have been found. Still, after all our research, we have not been able to find any one. But we do find cases in which it has been held that such an interest is merely equitable. In the case of Reed et al. v. Bullock et al., Litt. Sel. Cas. 510, the court of appeals of Kentucky say: “ But we affirm, without hesitation, that a right acquired by virtue of an entry for lands, is not a legal but an equitable right. It may, indeed, as contrasted with an illegal right, be said to be a legal one, and so may every equitable title. But in the same sense in which a legal right is contradistinguished from an equitable right, it possesses no one attribute of the former and every one which appertains to the latter. 2‡ affords no legal remedy; it can not even be noticed on a trial at law, and is peculiarly and exclusively cognizable in a court of equity. This was so ruled in the origin of controversies of this sort, and have ever since been undeviatingly maintained by the courts of this country.” The same principle was decided in the case of Chiles v. Calk, 4 Bibb, 559. Here let it be remembered that no decisions are of higher authority in this class of eases than those of Kentucky. In the case of Roads v. Symmes et al., 1 Ohio, 313, it was held by this court that the legal title does not vest until the patent is issued, and we have found nothing to the contrary of this except in the case of Lessee of Bird v. Swearingen, 1 Ohio, 409, where the judge, in delivering the opinion of the court, says: “He would have maintained ejectment against any person not having a grant from the government.” This question, however, was not involved in the case before the court. It is merely said by way of illustration, and if taken into consideration at all, must be considered as the individual opinion of the judge using the *154 expression. Although the opinions of no man are entitled to more respect, yet we can not concur with him in this particular, especially when we advert to the fact, that *this case was decided at the same term with the case of Roads v. Symmes, above referred to, in which the reverse of this principle was expressly maintained.
In adopting the principle advocated by the plaintiffs’ counsel, wo feel that we should be introducing a new rule of decision. That we should overrule, not only our own decision, but should deny the authority of the decisions of the Supreme Court of the United States, and of the courts of some, at least, of our sister states. We are unwilling to do this, but prefer to travel in the plain beaten track, until the law shall be changed by that authority, whose peculiar province it is to supply the remedy, when existing laws are found to be defective.
Upon this point in the case, a majority of the court are of opinion that the law is with the defendant.
2. The second reason assigned for a new trial is, that the court erred in the charge to the jury.
In order to determine this point correctly, it is necessary that we ascertain the true state of facts in the case. The lessors of the plaintiff had proven a possession in Kennedy and those claiming under him as early as the year 1811, which was continued until 1819, when the defendant was put in possession. They, had further proven the recovery of a judgment in favor of Carlisle against Kennedy, an execution under that judgment, a sale of the premises, and a purchase by themselves. In order to show title in Kennedy they offered in evidence a deed from John Carlisle to him, executed by Carlisle as collector of taxes, on June 3, 1803, purporting to convey the premises in controversy. This deed was objected to, but it was permitted by the court to go to the jury, not as evidence of title, but to show the boundaries of Kennedy’s claim. But it seems to be supposed by the plaintiff’s counsel, that inasmuch as it was before the jury, it was their right to consider it for any other purpose. It will not, however, I apprehend, be contended that they could give it any other than a legitimate effect. Suppose we give it that effect. It is a deed from a collector of taxes due prior to 1803, and before the organization of the state government, unaccompanied by any evidence to show that the lands had been subjected to taxation, that they had been entered *155 upon the duplicate, or that a single preliminary step had been taken to render the sale valid. There was ho evidence *that the lands had been sold, except such as is derived from the deed itself. Whatever the law may be now, with respect to the sale of lands for taxes, we know that, at this early period, the claimant under a tax title was bound to prove that every requisition of the. law had been strictly complied with. And without such proof, the deed itself furnished no evidence of title. Whatever may have been the ease in Massachusetts, and other states of this Union, such was the course of decision in this state, and we are not at liberty to depart from it. This deed, then, although in evidence, could have no other legitimate effect than that for which it was admitted by the court, that is, to show the boundaries of Kennedy’s possession. So far as respects title, it could prove nothing, and, of course, may be considered as out of ¿the case.
The only interest which the lessors of the plaintiff acquired by their purchase under Carlisle’s execution, was the interest of Kennedy, which was nothing more nor less’ than a naked possession. Of course, a'prior possession was the only title upon which the plaintiff could claim to recover.
To defend against this, the defendant proved a recovery in ejectment of the premises on his own demise, in a case where the lessors of the present plaintiff were defendants; and that in pursuance of this recovery, he was put in possession by the sheriff of the county in virtue of a writ of habere facias.
This was all the evidence on either side, so far as title is concerned, and the court being of opinion that this recovery, connected with the taking possession under the writ of habere facias, was evidence of better right than the mere possession of the plaintiff, provided the premises in controversy were the lands thus recovered, so instructed the jury. And further, that if they believed the witness Campbell, who testified that the premises were a part of the identical lands thus recovered, they must return a verdict for the defendant. Were the court mistaken in this principle of law? Counsel seem to consider the opinion of the court as based upon the hypothesis that a recovery in ejectment is a law to a subsequent suit. But it is not so. We admit the principle that one recovery does not settle the rights of the parties. But in ejectment the party having the better legal title must succeed. It seems to the court that the mere naked possession does not fur *156 nish as strong presumption of right, as does a recovery in ejectment, followed by possession. In the one case there is ^nothing but possession ; in the other, possession, accompanied by the judgment of a court, that the party has a right of possession. In such case, then, there can be no pretense of ouster or disseizin. An entry under a writ of habere facias, issued upon a subsisting judg'ment, is a lawful entry; and it would be unjust that a person thus in possession should be disturbed by one who had no other claim than that of prior possession, especially when that prior possession had been held to be illegal in a trial between the identical parties. The question in this case-is, whether the lessors of the plaintiff, showing only a prior naked possession, have better right than the defendant, who shows a recovery of the same premises in an action against these same lessors in a prior suit. It seems to us that they have not. The case of Johnson v. Rightmire, 16 Johns. 314, was, in one of its features, at least, similar to this. And the court decided that, “ although a prior possession under claim of rights, and not voluntarily abandoned, will prevail in ejectment over a subsequent possession acquired by mere entry without any lawful right, yet where the subsequent possession of the defendant is acquired by a recovery and execution in ejectment, his entry is a lawful entry, and affords a better presumption of right than the prior possession, and the party who brings a second action of ejectment, after being ousted by a writ of habere facias possession, must produce additional evidence of title, and not rest upon his possession alone.” There is this difference, however, between the case of Johnson v. Rightmire, and the case before the court. In that case the judgment was by default against the casual ejector — in this, a judgment upon trial. Still that court held that such a judgment furnished better presumption of right than a mere naked prior possession. If such be the law, and we take it to be, then there was no error in the instruction given to the jury.
3. The third reason assigned for a new trial is, that the verdict was against law and evidence.
If we are right as to that law, the verdict is strictly according to law; and, as to the evidence, it clearly sustained the verdict.
The motion for a new trial is overruled, and judgment will be entered for the defendant on the verdict.
Judge Collett dissented upon the first point.