Lucas v. Rhodes—48 Ind. App. 211.

---

## Lucas v. Rhodes.

[No. 6,934. Filed April 27, 1911. Rehearing denied June 28, 1911.]

1. EASEMENTS.—*Rights of Way.—Creation of.—Presumptions.*—
   A way is an incorporeal hereditament and consists in a right to pass over the land of another; and it may arise from grant, pre-

scription or necessity, and is either in gross—attached to, and dying with, the person using it—or appurtenant—annexed to and passing with a conveyance of the land—the disputable presumption being that it is appurtenant.  p. 217.

2.  EASEMENTS.—*Rights of Way.—Appurtenant.—Evidence.*—Evidence that the former owner of plaintiff's land had access over his own land to a highway on the east side thereof, that he owned another farm lying southwest from the plaintiff's farm, and separated therefrom by another farm over which he passed to reach the latter farm, and that such route was much nearer than any other, justifies a finding that any easement acquired therein by prescription was appurtenant and not in gross.  p. 218.

3.  EASEMENTS.—*Prescription.—Elements.*—To create an easement by prescription in a right of way the use of the way must be adverse, under a claim of right, exclusive, continuous, uninterrupted and with the owner's knowledge and acquiescence.  p. 219.

4.  EASEMENTS.—*Rights of Way.—Permissive Use.—Presumptions.*—The fact that an owner himself used a way left open across his farm, that an adjoining proprietor also used it, by virtue of an agreement that he should assist in keeping it in repair and in maintaining gates along the way, raises a disputable presumption that the adjoining proprietor's use was permissive.  p. 219.

5.  EASEMENTS.—*Prescription.—Question for Jury.*—Whether a right of way was obtained by prescription is ordinarily a question of fact for the jury.  p. 220.

6.  APPEAL.—*Weighing Evidence.*—The Appellate Court will not weigh conflicting evidence.  p. 220.

7.  TRIAL.—*Instructions.—How Considered.*—Where the instructions as a whole fairly state the law to the jury no prejudice is shown.  p. 221.

8.  TRIAL.—*Instructions.—Incorrect.*—Incorrect instructions should be refused.  p. 221.

9.  TRIAL.—*Instructions.—Duplication.*—Instructions requested that are covered by those given should be refused.  p. 221.

10.  TRIAL.—*Verdict.—Interrogatories.*—Answers to the interrogatories to the jury control the general verdict only where they are irreconcilable therewith under any evidence supposable within the issues.  p. 221.

11.  EASEMENTS.—*Prescription.—Descent.*—Easements appurtenant in a right of way pass with the land to the owner's heirs.  p. 222.

12.  EASEMENTS.—*Descent.—Partition.—Deeds.*—Easements appurtenant pass by descent with the land; and where quitclaim deeds are made by the heirs in partitioning such land, the heirs hold title by descent and not by virtue of such deeds.  p. 223.

13.  EASEMENTS.—*Omissions.—Partition.—Deeds.*—Where two heirs make quit-claim deeds dividing their father's land, the fact that they mentioned certain easements therein, but failed to mention

an alleged easement over a neighbor's land, does not import the exclusion of the latter easement; but such easement passed as appurtenant to the inherited land.   p. 224.

From Fountain Circuit Court; *I. E. Schoonover*, Judge.

Suit by Mary A. Rhodes against John H. Lucas. From a decree for plaintiff, defendant appeals. *Affirmed.*

*O. B. Ratcliff*, for appellant.

*V. E. Livengood* and *Fry Bryant*, for appellee.

HOTTEL, J.—This suit was brought by appellee against appellant to quiet title in her to a right of way through appellant's land. The complaint is in one paragraph. The cause was put at issue by a general denial, there was a trial by jury, a general verdict for appellee, answers to interrogatories filed therewith, and a judgment on the verdict in favor of appellee, from which appellant took this appeal.

The errors assigned and relied on by appellant for reversal call in question the ruling of the court on the motion for a new trial, and the motion for judgment in appellant's favor upon the answers to interrogatories.

The facts in this case about which there is no dispute are, in substance, as follows: For fifty years or more appellee's father, John Rhodes, Sr., deceased, and Perry Timmons owned adjoining tracts of land in Fountain county, Indiana, located between two roads, running parallel north and south, and about one and one-fourth miles apart, the road on the east being known as the "Terre Haute road" and the road on the west, the "river road." The Rhodes tract was the closer to the Terre Haute road, and, in fact, contained and embraced a strip of ground of one acre, used for road purposes, which extended out to said Terre Haute road, thereby giving to said Rhodes a direct outlet and passageway over his own land to said Terre Haute road. It appears also from the evidence that the way as used by said Rhodes to get from his premises to said Terre Haute road was a continuation of the way in question. Said Timmons tract adjoined said Rhodes tract on the west and

south, and extended west to said river road. On the southeast forty of said Timmons tract, being the forty that appellant now owns and over which the easement in question passes, there was a residence near said easement, which the tenants and renters of said Timmons occupied and used. Perry Timmons continued the owner of said forty-acre tract until 1892, when he sold it to his son, John, and said John held and owned it until August, 1896, when he sold it to appellant. Said Timmons and son and appellant, and their tenants and employes, each and all during said ownership and occupancy of said tract used said right of way now claimed by appellee, that being the only way they had to get to the river road, until the appellant bought another tract of land, built on it, and abandoned and tore down said residence. Said John Rhodes, deceased, during his life also owned a river-bottom farm, which was southwest of and separated from his upland farm, and lay part on each side of said river road. In March, 1904, John Rhodes, Sr., died intestate, and in April, 1904, his children and heirs agreed upon a partition and division of his real estate, and made quitclaim deeds to one another for their respective shares therein. In this division appellee got the northeast fifty acres with the old home on it, and the one-acre strip leading out to the Terre Haute road, and her brother John got a 105.33-acre tract lying between and entirely separating the lands of appellee and appellant, and being one of the tracts over which said right of way passes. In making their quitclaim deeds to one another for their said respective shares of said real estate, said John Rhodes, in his deed, provided for a right of way over appellee's tract to the Terre Haute road, and appellee's deed recognized this right of way and was made subject thereto, and appellee in her deed provided for the right to use a spring on the tract conveyed to her brother John, and John's deed was also made subject to such use, but no provision or mention of the right of way in question was made in either of said deeds. The right of way in question

had been used by appellee and her predecessor in title, John
Rhodes, Sr., deceased, prior to the bringing of her suit herein,
for a period of about sixty years, for purposes of travel in
any and all kinds of vehicles used by them in going to and
from said residence on said upland farm to said river road,
and especially by decedent Rhodes in going to and from his
said residence and upland farm to his said river-bottom farm.
We append a plat of the several tracts of land over which

the way passes, showing the location of the road with refer-
ence thereto.

In his argument, appellant first discusses the sufficiency

of the evidence to sustain the verdict, and insists that appellee, in her complaint, proceeds upon the theory that she has a prescriptive right to the way in question appurtenant to the land, and that she must recover on this theory, or not at all.

Appellee, on the other hand, insists that the general allegations of the complaint "are comprehensive enough to include the right of way derived by any of the well-recognized means—by grant, prescription or necessity"—and cites as supporting this position the cases of *Mitchell* v. *Bain* (1895), 142 Ind. 604, *Steel* v. *Grigsby* (1881), 79 Ind. 184, 186, and others. These cases lend support to appellee's position, and this theory seems to have been adopted by the court below and the parties in the trial of the cause, judging by the evidence, the answers to the interrogatories, and the judgment rendered in the case, as disclosed by the record; but under our view of the evidence in this case, as hereinafter expressed, it is not important whether the complaint be given the comprehensive scope claimed by appellee, or restricted and limited, as insisted upon by appellant. Our ultimate conclusion is the same in either event.

The first ground of the motion for a new trial is predicated on the insufficiency of the evidence to sustain the verdict. As reasons for urging this ground of the motion, counsel insist (1) that the evidence shows that appellee and her predecessors in title have at all times had over their own land a good way out to said Terre Haute road; that the right of way in question has at no time been essential to the use and enjoyment of appellee's tract of land, and that therefore no easement appurtenant to said real estate could be created by prescription, but that whatever easement, if any, was created by such use was in gross, and died with the person so using the way for the required length of time; (2) that the evidence shows that the right of way in question up to the time of the removal of the residence on appel-

lant's forty-acre tract, was and always had been necessary to the use and enjoyment of appellant's said tract, and that in such a case the use of said way by appellee and her predecessors in title "did not necessarily import adverse user under a claim of right, but, under such circumstances, such use may be inferred to be with the consent and permission of the owner of the servient estate;"(3) that the undisputed evidence shows that the use of the way in question "began about sixty years ago, in the intimate relations of two adjoining landowners over and across their adjoining farms, * * * for mutual accommodation, and that such use was inconsistent with the adverse use under a claim of right necessary under the law to create title by prescription;" (4) that the undisputed evidence shows that in the beginning of the use of the way in question there was an agreement between John Rhodes, Sr., deceased, and appellant's remote grantor, Perry Timmons, "whereby said Rhodes was to keep up a part of the gates and the road for the privilege of going along said way in question," and that the use of said way began and continued "in not only a spirit of mutual accommodation, but also a spirit of mutual remuneration," and that such use under said agreement was permissive only, and never intended by either of the parties to said agreement to be "perpetual," and to constitute an "unqualified right."

The law applicable to and controlling upon the first ground, urged by appellant against the sufficiency of the evidence, as laid down by the Supreme Court, is as

1. follows: "A way is an incorporeal hereditament, and consists in the right of passing over another's ground. It may arise from grant, prescription or necessity, and is either in gross, that is, attached to the person using it, or appurtenant, or annexed to and passing with a conveyance of the estate, *but it is never presumed to be in gross when it can be fairly construed to be appurtenant to the*

*land."* (Our italics.) *Sanxay* v. *Hunger* (1873), 42 Ind.
44, 48. See, also, Washburn, Easements (4th ed.) p. 257;
2 Blackstone's Comm. *35, notes by Cooley.

"Private ways are either appendant or in gross. Ways appendant are incident to an estate; they inhere in the land, concern the premises, pertain to its enjoyment and pass with the land. Ways in gross attach to and vest the right in the person to whom granted. *Alley* v. *Carleton* [1867], 29 Tex. 74, 94 Am. Dec. 260; *Davidson* v. *Nicholson* [1877], 59 Ind. 411; *Moore* v. *Crose* [1873], 43 Ind. 30; *Sanxay* v. *Hunger* [1873], 42 Ind. 44; *Fankboner* v. *Corder* (1891), 127 Ind. 164; *Harding* v. *Cowgar* (1891), 127 Ind. 245. Ways in gross cannot be assigned or granted to another." *Hoosier Stone Co.* v. *Malott* (1891), 130 Ind. 21.

What appellant says, with reference to the disclosure by the evidence that appellee and her predecessor in title had a way over their own land to the Terre Haute road, is
2. true. This fact might preclude the existence of the way in question by necessity, but we do not understand that such fact necessarily prevents the way in question from being appurtenant to appellee's land. There is evidence that shows also that the private way in question was the only direct road from the residence and upland farm of John Rhodes, Sr., to the river road and his bottom farm; that the distance to such river road and bottom farm from said upland farm, and the residence thereon, by such direct way was about two miles shorter, and less than half the distance by said Terre Haute road; that the way in question connected said upland farm with said river road, having one of its termini on said upland farm and the other at said river road, and also connected by direct route said river farm with said upland farm. This evidence tended to show that the way in question was incident to appellee's land, and pertained to its enjoyment within the meaning of the authorities, heretofore cited, and therefore warranted the jury

in finding that any easement acquired therein by prescription was appurtenant to the land, and not in gross.

Reasons two, three and four, urged by appellant against the sufficiency of the evidence, in effect challenge its sufficiency to show an adverse user of the way in question

3. under a claim of right. The rule of law upon the subject of what constitutes an easement by prescription is that to create an easement by prescription the use thereof must be adverse under a claim of right, exclusive, continuous and uninterrupted, besides being with the knowledge and acquiescence of the owner of the estate over which the easement is claimed. *Davis* v. *Cleveland, etc., R. Co.* (1894), 140 Ind. 468, 470; *Nowlin* v. *Whipple* (1889), 120 Ind. 596, 598, 6 L. R. A. 159; *Rennert* v. *Shirk* (1904), 163 Ind. 542; *Fankboner* v. *Corder, supra.*

It is true, as appellant insists, that the undisputed facts show that the way in question during all its use by John Rhodes, Sr., appellee's predecessor in title, up to the

4. year 1899, was also used by appellant and his predecessors in title, and that such way was kept open by appellant and his predecessors, for their own benefit, and we think that counsel are correct in their statement that in such case, under the law, the use of such way by John Rhodes, Sr., was not necessarily adverse, but was entirely consistent with the use of appellant and his predecessors, and that the natural inference would be that such use by said Rhodes was permissive only. We submit, however, that such inference may be overcome by other evidence in the case.

It is also true that there was considerable evidence tending to show that the use of the way in question by John Rhodes, Sr., grew out of the friendly relations existing between him and his neighbors, appellant's predecessors in title, and that there was in the beginning of the use some agreement between said Rhodes, and said Timmons, both

deceased, by which said Rhodes was permitted to use the way in question, upon condition that he would assist in keeping it in repair, and in maintaining gates along said way. This evidence also indicated, as counsel insist, a permissive use only of the way, and was inconsistent with the adverse use contemplated by the law, and no matter how long continued, under such executory agreement and license, could never ripen into an absolute right or title. But on the other hand, there was some evidence that tended to show an adverse use, a use under a claim of right, recognized and acquiesced in by appellant's predecessors in title. A number of witnesses testified that for a period of fifty years and more decedent Rhodes, his family and employes used said way whenever, and in any manner, they saw proper, without asking permission, and without objection from appellant's predecessors, and that said Rhodes, his sons and employes assisted in repairing said way. The widow of said Perry Timmons testified that she heard her husband say, while he was in possession of the land over which the easement passes, at the time he sold appellant's said forty-acre tract to his son John, that "there was always to be a road there." Another witness testified that he heard Perry Timmons say to John Rhodes, Sr., while Timmons was in possession of said land, on an occasion when said witness was at work for Rhodes, that he (Timmons) wanted the road "to stand open always. It is the best way through there."

It was for the jury to say whether, under all the evidence throwing light upon the manner and character of said use of the easement in question, and on all the facts and circumstances connected therewith, it was adverse, or permissive only.

5. circumstances connected therewith, it was adverse, or permissive only.

There was some evidence that tends to support the finding. This was enough, under the law, to prevent this court from disturbing the verdict.

6. the finding. This was enough, under the law, to prevent this court from disturbing the verdict.

Counsel also insist that the court erred in giving certain

instructions in the case, tendered by appellee, and in refusing others tendered by appellant. We have examined these instructions, and, taken as a whole, we are of the opinion that they state the law correctly and without prejudice to appellant.

Instruction twenty-four, asked for by appellant, and refused, relies upon the quitclaim partition deeds made among the heirs of John Rhodes, Sr., to defeat appellee's right in the easement in question, and for the reasons hereinafter expressed in considering the motion for judgment on the interrogatories, we think is not a correct statement of the law.

The principles covered by instructions twenty-two and twenty-three, asked for by appellant, and refused by the court, we think are more accurately expressed in other instructions given.

Appellant also insists that the verdict was contrary to law, but as the same questions are presented on the motion for judgment on the answers to interrogatories, we have considered this question under that error assigned. No error was committed by the trial court in overruling the motion for a new trial.

Appellant next urges that his motion for judgment on the answers to the interrogatories should have been sustained. This motion was properly overruled, unless such special findings and the general verdict cannot be reconciled with each other under any supposable facts provable under the issues. *Rogers* v. *Leyden* (1891), 127 Ind. 50; *Ohio, etc., R. Co.* v. *Heaton* (1894), 137 Ind. 1; *Rouyer* v. *Miller* (1896), 16 Ind. App. 519.

Appellant insists, however, that the answers to these interrogatories exclude every conclusion that will authorize a recovery, and, as ground for so insisting, says that the answers to the interrogatories find that appellee had a good way over her own lands to the Terre Haute public highway, and that therefore the way in question is not one of neces-

sity; that appellee was a party to the partition quitclaim deeds, dividing the lands of her deceased father, whereby she became the owner in fee of fifty-one acres, and her brother John became the owner of 105.33 acres, which "lie between and entirely separate said land of appellee from that of appellant;" that both deeds provide for an easement to said brother over appellee's land out to the Terre Haute road, and an easement to appellee in a spring on the land of said brother, but make no provision for or mention of the right of way in question over said brother's said tract, and thus failing to provide for such right of way over said brother's tract, she lost said right, and such tract separating that of appellant from appellee, the easement over appellant's land, if ever appurtenant to appellee's land, ceased to be so appurtenant from and after the separation of said tracts by the brother's intervening tract over which the easement was not preserved.

Our conclusion upon the other phase of the case obviates the necessity for discussing the effect of these answers upon the question of whether this is a right of way by 11. necessity. Having reached the conclusion before indicated in discussing the evidence, viz., that there was some evidence that justified the jury in finding that a prescriptive right in and to the way in question had been acquired by John Rhodes, Sr., before his death, and that such right was not in gross, but was appurtenant to the land, it follows under the law that whatever right was acquired by John Rhodes, which was appurtenant to his land, passed with the land to his heirs. *Ross* v. *Thompson* (1881), 78 Ind. 90, 98; *Keiper* v. *Klein* (1875), 51 Ind. 316, 318; *Parish* v. *Kaspare* (1887), 109 Ind. 586, 588; *Ellis* v. *Bassett* (1891), 128 Ind. 118, 122, 25 Am. St. 421; *Fankboner* v. *Cordon, supra.*

Whatever right or title appellee holds in any portion of the land of her deceased father, separated and set off to her by her quitclaim deed, she holds by descent and not by

such deed, and this principle applies with equal force to any and all easements appurtenant to the land so set off to the respective heirs. *Avery* v. *Akins* (1881), 74 Ind. 283, 290; *Moore* v. *Crose* (1873), 43 Ind. 30, 33; *Thompson* v. *Henry* (1889), 153 Ind. 56; *Haskett* v. *Maxey* (1893), 134 Ind. 182, 189, 19 L. R. A. 379.

In the case of *Avery* v. *Akins, supra,* our Supreme Court, at page 290, quotes with approval from a California case: "In *Wade* v. *Deray* [1875], 50 Cal. 376, it was held to be 'well settled that a decree or judgment in partition has no other effect than to sever the unity of possession, and does not vest in either of the cotenants any new or additional title. After the partition, each had precisely the same title which he had before; but that which before was a joint possession was converted into a several one.' See, also, *Knight* v. *McDonald* [1871], 37 Ind. 463, and *Teter* v. *Clayton* [1880], 71 Ind. 237."

*Moore* v. *Crose, supra,* was a case where an easement claimed to be appurtenant to the land was involved. There was also a quitclaim deed afterward made to said easement. In discussing that case the Supreme Court said: "The appellant claims that the way was appendant or appurtenant to the land conveyed by that deed. If so, the right to the way passed by the deed conveying the land, and not by the separate quitclaim deed."

The quitclaim deed made by the heirs of John Rhodes, Sr., separating and dividing the lands of their deceased father among themselves, only operated to transfer such interest as the respective grantors had inherited from their deceased father to the respective grantees of the several deeds, and created no new title in such grantees.

In the case of *Stephenson* v. *Boody* (1884), 139 Ind. 60, 68, the Supreme Court said: "The general proposition is abundantly maintained by the adjudged cases that a deed of release, or quitclaim, as was the case here with at least one of the deeds, or a conveyance of the right, title and interest

of the grantor, even though it be with full covenants of warranty without designating in the instrument any particular estate, as was the case with at least two of the deeds here involved, operates simply to transfer whatever interest the grantor had at the time. *Habig* v. *Dodge* [1891], 127 Ind. 31; *Locke* v. *White* [1883], 89 Ind. 492; *Bryan* v. *Uland* [1885], 101 Ind. 477; Rawle, Covenants (5th ed.) §250.''

The following language in the case of *Ellis* v. *Bassett*, *supra*, at page 120, is particularly applicable to this case: ''A right of way, upon a severance of the estate by partition between heirs, sometimes arises when it would not exist in case of a conveyance of one portion of the premises. And it may be laid down as a general rule that a partition of real estate among heirs carries with it by implication the same right of way from one part to and over the other as had been plainly and obviously enjoyed by the common ancestor, in so far as it is reasonably necessary for the enjoyment of each part. *Goodall* v. *Godfrey* [1880], 53 Vt. 219, 38 Am. Rep. 671; *Collins* v. *Prentice* [1842], 15 Conn. 39, 38 Am. Dec. 61; *Burwell* v. *Hobson* [1855], 12 Gratt. 322, 65 Am. Dec. 247; *Kilgour* v. *Ashcom* [1820], 5 Harr. & J. 82; *Seymour* v. *Lewis* [1861], 13 N. J. Eq. 439, 78 Am. Dec. 108; *Elliott* v. *Salle* [1862], 14 Ohio St. 10. Where the owner of an estate imposes upon one part an apparent and obvious servitude in favor of another, and at the time of the severance of ownership such servitude is in use, and is reasonably necessary for the fair enjoyment of the other, then, whether the severance is by voluntary alienation or by judicial proceedings, the use is continued by operation of law. *John Hancock Mut. Life Ins. Co.* v. *Patterson* [1885], 103 Ind. 582, 53 Am. Rep. 550.''

Appellant insists that the mention of other easements in the deeds of appellee and her brother John imports the exclusion of the easement in question, under the general 13. rule that the express mention of one thing implies the exclusion of another. To apply this rule to the

case here presented would be to give it a scope and latitude never intended. As a general rule, where the thing omitted is of the same class and kind as those expressed, and where the same complete and effectual disposition or control thereof may be exercised by the parties to the instrument, the expression of one or more implies the exclusion of the others; but in this case, the easement omitted is not of the same class and kind as the easements mentioned. The easement omitted is one that affected lands other than the lands conveyed by the deeds in question, and one in which parties other than the heirs of John Rhodes, Sr., were interested. Appellant was not a party to the partition of the lands that the deeds in question attempted to partition, and any mention of the easement in the deeds in question could have in nowise affected appellant's rights therein, or the rights of any one other than those among whom the partition is made. Nor is there anything to show that the easements quitclaimed by the deeds were of the same class and kind as the omitted easement.

So far as these easements mentioned are concerned, the proof does not disclose whether they were appurtenant to the land, and would have passed by the conveyance of the dominant estate. They may have stood upon an entirely different footing from the omitted easement, and it may have been necessary to mention them in order that title thereto might pass, whereas it was not necessary to mention the easement in question to pass the title thereto, provided, of course, that we are correct in our conclusion that the jury was warranted in finding that this easement was appurtenant to the land.

The heirs of decedent attempted to quitclaim to each other only such easements as they themselves controlled. The easement over appellant's land they could not control and an attempted conveyance or release and quitclaim thereof, so far as it affected appellant's land, would have been a

nullity. Such quitclaim deed could have affected only the interest the heirs had inherited through their father, and if they inherited no interest in the easement, then the quitclaim deed thereto would have conveyed no interest. If they did inherit such interest in the easement, it, so far as the land conveyed was concerned, passed with the estate, to which it was appurtenant, and would not, under the decisions before cited, be held to pass by the quitclaim deed, even if the easement had been mentioned therein. Certainly, if under the law, title to the easement in such a case would not pass by virtue of the quitclaim deed, when the easement was mentioned therein, it could not be said that a failure to mention the easement operated as a relinquishment thereof. Appellee's brother did not so treat said conveyance, nor did any of the other owners of the land over which the easement in question passes, except appellant. All except appellant are conceding and agreeing that the easement exists in favor of appellee. We think it clear, under the authorities cited, that the finding by the jury that appellee was a party to the partition deeds in question, and failed to have mentioned therein the easement in question, is not in such irreconcilable conflict with the general verdict as to prevail against it.

Judgment affirmed.