# CRAVEN *v.* CRAVEN.

[No. 22,505.    Filed November 25, 1913.    Rehearing denied April 30, 1914.]

1. ADVERSE POSSESSION.—*Acquisition of Right.—Occupancy.*—One who, intentionally or by mistake, takes actual, visible and exclusive possession of another's land and holds the same for twenty years as his own, acquires a title in fee simple.  p. 557.

2. ADVERSE POSSESSION.—*Elements.—Claim of Right.*—Adverse possession consists in the actual, open, notorious, exclusive and continuous possession of lands under a claim of right, and such claim of right need not be established by proof of oral declarations, but may be inferred from the manner of occupancy and positive acts of ownership inconsistent with that of the true owner, and from erecting, repairing, occupying or leasing buildings thereon.  p. 557.

3. ADVERSE POSSESSION.—*Evidence.—Presumptions.*—Where one is shown to have been in possession of land for a period of limitation, apparently as owner, and such possession is not explained or otherwise accounted for, it will be presumed to have been adverse, but the presumption may be rebutted by proof that the possession in its origin was merely permissive.  p. 557.

4. ADVERSE POSSESSION.—*Occupancy and Improvement.*—Where it appeared that defendant and her mother had lived upon the land in dispute from 1864, the date of an alleged will under which plaintiff was claiming, until the death of the mother in 1891, and openly exercised acts of exclusive ownership of such land, including the making of improvements, the cultivation of the same, and the payment of taxes, and that from the death of her mother, defendant, who was her sole heir, continued to occupy the same land under the same conditions, had thereby acquired an absolute title, regardless of whether any oral declarations were made that the occupancy was under a claim of right.  p. 557.

5. LIMITATION OF ACTIONS.—*Ignorance of Cause of Action.*—The running of the statute of limitations is not prevented by the fact that a person entitled to an action has no knowledge of his right to sue, or of the facts out of which his right arises, nor is the

commencement of the period of limitation thereby postponed until he discovers the facts or learns of his rights thereunder. p. 559.

6. LIMITATION OF ACTIONS.—*Nature of Statute.*—Statutes of limitation are regarded as statutes of repose, resting upon sound policy and tending to the peace and welfare of society, and they are as essential to the general welfare and wholesome administration of justice as any other statutes. p. 559.

7. ADVERSE POSSESSION.—*Effect of Statute of Limitations.*—Statutes of limitation operate, as a rule, not only to cut off one's right to sue to recover real property which has been in the adverse possession of another for a specified time, but also to vest the disseisor with title which he may use either as a weapon or as a shield, as necessity may demand, in any court or procedure. pp. 560, 561.

8. ADVERSE POSSESSION.—*Character of Possession.—Title Acquired.* —The possession of land under such conditions as are manifested by the true owners of land in the community, is adverse possession, and, if maintained for the statutory period, vests the possessor with the title thereto, not only as against strangers, but also as against the former owner thereof, as effectively as if there had been a formal conveyance. p. 561.

From Hendricks Circuit Court; *James L. Clark,* Judge.

Action by Jasper Craven against Adaline Barker Craven. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1405 Burns 1914, Acts 1901 p. 590.) *Reversed.*

*George W. Brill, George C. Harvey* and *Robert W. Mc Bride,* for appellant.

*Addison C. Harris, Thad S. Adams, Enloe & Pattison* and *Henry H. Hammer,* for appellee.

ERWIN, J.—This suit was commenced by appellee August 18, 1910, for the recovery of certain real estate in Hendricks County, with rents and profits; to quiet title thereto, and asking for partition. The appellee's claim is based on a devise contained in a will, alleged to have been made September 20, 1864, the maker of which died, December 13, 1864, the will never having been probated or offered for probate until April 14, 1909, forty-four years after its execution. Appellee's complaint is in four paragraphs, all of which aver in different terms, title to the land in ques-

tion in appellee, and allege an adverse, but unfounded claim by appellant. The appellant answered by general denial, and the twenty-year statute of limitations, and asked that her title be quieted. There was a trial by jury and a general verdict in favor of appellee, with answers to certain interrogatories; on which general verdict the court, after overruling a motion for judgment on the answers to the interrogatories, adjudged that appellee was the owner of the undivided one-third of the land in question, quieting his title thereto, and adjudging partition and costs of the action.

The second assignment of error presents the question as to whether appellee's claim to the real estate is barred by the statute of limitations. It is claimed by appellee, and it is shown by the answers to interrogatories, that in the year 1859, one Jeremiah Barker died, seized in fee of 160 acres of land, which is the land in controversy (appellee claiming to be the owner of one-third thereof); that Jeremiah Barker left surviving him his widow, Jane Barker, Jasper Barker, a son, and Adaline Barker, a daughter, who is the appellant in this case. On November 13, 1862, appellant married W. M. Craven and thereafter with her mother, her brother Jasper and her husband continued to live on this land. The appellee is the oldest son of Adaline Barker Craven and W. M. Craven and was born on this land November, 1863 and was named for his uncle Jasper. Jasper Barker enlisted in the army with others of the neighborhood, among whom was Enoch Scotten and F. M. York, both of whom lived near the Barkers. Jasper Barker was wounded in battle and in September, 1864 was in a hospital at Marietta, Georgia. From there he was sent home on furlough. He died at his home on the land in controversy, December 13, 1864. Enoch Scotten was also home on furlough when Jasper died and had visited him two or three times during his last illness. After the war Scotten and York returned to that vicinity and lived there until 1879, when York re-

moved to Kansas, where he died some years ago. Scotten continued to live in that neighborhood until 1909. Jasper Barker's mother and appellant both believing that he had died intestate continued to live on the land, treating it as their own, until the mother died in 1891; since which time appellant has continued to reside thereon, claiming to be the sole owner thereof. The appellee lived with his mother, the appellant, until he was twenty-four years old, or until 1887. Neither he nor Jane Barker, nor appellant had any knowledge of the existence of any will made by Jasper Barker until in the spring of 1909, when as appellee claims, his uncle Jasper Barker, although having been dead for more than forty-four years, appeared to him in a vision or dream, and told him of the existence of a will and that it was in possession of Enoch Scotten, who still lived in the neighborhood, and who upon request of appellee produced and gave him the will. It was presented for probate on April 14, 1909, on the testimony of Enoch Scotten, whose name with F. M. York appeared as witnesses to its execution forty-four years, six months and twenty-four days after its execution. York died many years prior to its probate, and Scotten soon thereafter. This suit was begun August 18, 1910, forty-four years, eight months and five days after the death of Jasper Barker.

The question for the decision of this court is, whether under the facts established and found by the jury in its general verdict, and by the answers to interrogatories, the statute of limitations bars the appellee's right to recover. It is claimed by the appellant that the twenty-year statute of limitations controls in this case and that the statute begins to run from the death of Jasper Barker, December 13, 1864. Appellee concedes that while the statute of twenty years applies, that it did not begin to run until the probate of the will, April 14, 1909. The question as to when a will may be probated, after its execution, or whether the general

statute of limitations applies has never been decided by this court.

It is well settled by the decisions of this and the Appellate Court that an occupant, who by mistake or by intention takes actual, visible and exclusive possession of an-
1. other's land and holds the same for twenty years as his own, acquires a title in fee simple. *Rennert* v. *Shirk* (1904), 163 Ind. 542, 72 N. E. 546, and numerous cases cited. Adverse possession consists in the actual, open, notorious, exclusive and continuous possession of
2. lands under a claim of right. *Rennert* v. *Shirk;* *supra,* 545.

To prove a "claim of right" oral declarations are not necessary. It may be inferred from the manner of occupancy and positive acts of ownership, inconsistent with the ownership of the true owner, and from erecting, repairing, occupying or leasing buildings thereon. *Rennert* v. *Shirk, supra,* 546, 547; *Southern Ind. R. Co.* v. *Norman* (1905), 165 Ind. 126, 132, 74 N. E. 896; *Mull* v. *Williamson* (1906), 166 Ind. 537, 544, 78 N. E. 76. Where one
3. is shown to have been in possession of land for a period of limitation apparently as owner, and such possession is not explained or otherwise accounted for, it will be presumed to have been adverse; but the presumption may be rebutted by proof that the possession, in its origin, was not adverse, but permissive. 3 Kerr, Real Property 2296, 2297; 2 Pingrey, Real Property §§1163, 1164; Tiedeman, Real Property (2d ed.) §699; *Rennert* v. *Shirk, supra,* 549.

An entry upon land with the intention of asserting ownership, and continuing in the open and exclusive possession thereof, exercising the usual acts of ownership under such claim, without asking permission, and in disregard
4. to all other claims is sufficient to make the possession adverse. Such possession continued uninterruptedly

for twenty years or more will establish title to the extent that the possession is actual and exclusive. *May* v. *Dubbins* (1906), 166 Ind. 331, 334, 77 N. E. 353, and cases cited; *Lucas* v. *Rhodes* (1911), 48 Ind. App. 211, 94 N. E. 914; *Davis* v. *Waggoner* (1908), 42 Ind. App. 115, 119, 83 N. E. 381, 84 N. E. 1105; *Pittsburgh, etc., R. Co.* v. *Jellison* (1908), 42 Ind. App. 628, 86 N. E. 501. The answers to the interrogatories establish the fact that appellant and her mother from the death of Jasper Barker, in 1864 until the death of the mother in 1891, actually occupied said land and openly exercised acts of exclusive ownership of said lands, including the making of improvements, the cultivation of the same, and the payment of taxes; and that from the death of the mother in 1891, appellant has continued to occupy the same lands under the same conditions. This occupancy under the rules above stated makes the title absolute in the appellant, regardless of whether any oral declarations were made that they were occupying the land, under a "claim of right." *Rennert* v. *Shirk, supra,* 546. The answers to interrogatories disclose the facts that when Jasper Barker died the mother and appellant, his sister, were his only heirs at law and that they took the land believing that Jasper Barker died intestate; and that his mother died before the will was discovered, and never knew that such a will was in existence. Both the mother and sister occupied the land believing that they were the rightful owners of the same and under all the rules ever declared, defining adverse possession, thereby acquired title thereto as against the whole world including appellee, regardless of the fact that he recently discovered that he had been made a beneficiary under the will of his uncle to the extent of the one-third interest in the lands.

If it could be argued that the appellee's right to bring his action did not accrue until he became of age, then he should have brought it in 1886 for it is shown that he was born in 1863, and more than twenty years have elapsed since

he became of age.  The bare fact that he had no
5.  knowledge of his rights to the land would not prevent
the statute running.  *Schultz* v. *Board, etc.* (1884),
95 Ind. 323, 325, and cases cited.  The Appellate Court in
the case of *State, ex rel.* v. *Walters* (1903), 31 Ind. App. 77,
82, 66 N. E. 182, 99 Am. St. 244, lays down the rule that
"The fact that a person entitled to an action has no knowl-
edge of his right to sue, *or of the facts out of which his
right arises,* (our italics) does not prevent the running of
the statute, or postpone the commencement of the period
of limitation, until he discovers the facts or learns of his
rights thereunder."  25 Cyc. 1212 and cases there cited.
    "Statutes of limitations are now generally looked
6.  upon as statutes of repose.  They rest upon sound
policy, and tend to the peace and welfare of society,
and they are to be deemed just as essential to the general
welfare and wholesome administration of justice as statutes
upon any other subject."  *High* v. *Board, etc.* (1884), 92
Ind. 580, 589.

While it may have been the intention of the uncle to
bestow upon the appellee, the real estate of which he died
possessed, yet if he had the power to appear to the nephew
and disclose the existence of the will in 1909, he is the only
one who can be said to be to blame, and his failure to make
the facts known for forty-five years has effectually barred
the nephew's right to recover.  This must be the law, else
no title would be secure, however long it may have been
occupied under a "claim of right".  In all cases of title
by prescription someone may have had the record title
during all the time that the title by prescription was ripen-
ing and be ignorant of that fact.  And while an injustice
may be done in some instances, it is better for the sake of
the peace and welfare of the State, that the rule should
prevail, that adverse possession for twenty years will ripen
into a title in fee simple.

This judgment is reversed with instructions to the court to

render judgment on the answers to the interrogatories of the jury, in favor of appellant on her cross-complaint, quieting her title to the real estate, and for costs of action.

## ON PETITION FOR REHEARING.

ERWIN, J.—It is earnestly contended by appellee that this court erred in directing a judgment for appellant on the answers to interrogatories nothwithstanding the general verdict.

The learned attorney who prepared the petition for a rehearing has overlooked an important proposition of law relating to titles by prescription, viz., that modern statutes of limitation operate, as a rule, not only to cut off one's right to bring an action for the recovery of real property, which has been in the adverse possession of another for a specified time, but also to vest the disseisor with title. These enactments rest on a wise public policy, which regards litigation with disfavor, and aims for the repose of conditions which the parties have suffered to remain unquestioned long enough to indicate their acquiescence therein. The intention is not to punish one who neglects to assert his right, but to protect those who maintained the possession of land for the time specified by the statute, under claim of right or color of title. *Jasperson* v. *Scharnikow* (1907), 150 Fed. 571, 80 C. C. A. 373, 15 L. R. A. (N. S.) 1178 and note.

The jury found by its answers to interrogatories that the mother and sister (appellant) took possession of this land on the death of the son and brother in 1864, ignorant of any will and believing that none had ever been made, and knowing (as all are supposed to know the law) that without a will they took by inheritance all of said real estate and held it, converting all the proceeds of the same to their own use, believing that it was rightfully theirs, as the jury found that the mother died and the sister con-

tinued to hold the land afterwards, each ignorant of the existence of any will. How could either have acknowledged appellee's title in and to the land, by reason of the will, when the jury found by its answers to interrogatories that none of the parties knew of the existence of the will? The appellee's claim of title is by reason of the will. This, as the answers to the interrogatories show, was not discovered until 1909, more than forty years after appellant and her mother took possession, both under color of title and claim of ownership, and at no time recognized the title which appellee now claims under the will, for none knew, not even appellee, that such an instrument was in existence. Any title appellee might have claimed as his own, could not have been by reason of the will.

The possession of land under such conditions, as are manifested by the true owners of land in the community, is adverse possession, and if maintained for the stat-

8.    utory period vests the possessor with title thereto, not only as against strangers, but also as against the former owner thereof, as effectively as if there had been a formal conveyance. *Jasperson* v. *Scharnikow, supra; Strong* v. *Baldwin* (1908), 154 Cal. 150, 97 Pac. 178, 129 Am. St. 149; *Nelson* v. *Brodhack* (1869), 44 Mo. 596, 100 Am. Dec. 328; *Hodges* v. *Eddy* (1868), 41 Vt. 485, 98 Am. Dec. 612; *Weed* v. *Keenan* (1887), 60 Vt. 74, 13 Atl. 804, 6 Am. St. 93. It has been said that the title thus gained may be used by the disseisor either as a weapon or as a shield, as his necessities may demand in any court or procedure.

7.    *Rodgers* v. *Day* (1898), 115 Mich. 664, 74 N. W. 190, 69 Am. St. 593; *Ford* v. *Wilson* (1858), 35 Miss. 490, 72 Am. Dec. 137 and note; *King* v. *Carmichael* (1893), 136 Ind. 20, 35 N. E. 509, 43 Am. St. 303; *Sutton* v. *Clark* (1900), 59 S. C. 440, 38 S. E. 150, 82 Am. St. 848. The right, as well as the remedy, of the disseisee is destroyed. *Cannon* v. *Stockmon* (1869), 36 Cal. 535, 95 Am. Dec. 205;

*Reed* v. *Bullock* (1821), Litt. Sel. Cas. (Ky.) 510, 12 Am. Dec. 345; *Ludlow* v. *Van Camp* (1822), 7 N. J. L. *113, 11 Am. Dec. 529 and note.

Thus, while the statute is barring the right of recovery on the part of the true owner, it is ripening the title in the holder.

Appellee is in error in asserting that we went into the evidence to determine the rights of the parties. We did refer to the evidence to a certain extent, as a matter of the history of the case, but confined ourselves to the complaint, answers, the verdict and the answers to the interrogatories in determining the rights of the parties.

We are of the opinion that the proper conclusion was reached in the original opinion and therefore the petition for a rehearing is denied.

Note.—Reported in 103 N. E. 333; 105 N. E. 41. As to color of title and possession with such, and without, see 125 Am. St. 303. See, also, under (1) 1 Cyc. 1036, 1135; (2) 1 Cyc. 981, 1146; (3) 1 Cyc. 1146; (4) 1 Cyc. 1028, 1029; (6) 25 Cyc. 983; (8) 1 Cyc. 1135.