Waldemar KISSEL, Melva Kissel,
Appellants–Defendants,

v.

Mark ROSENBAUM, Nona Rosenbaum,
Appellees–Plaintiffs.

No. 87A01–9104–CV–116.

Court of Appeals of Indiana,
First District.

Oct. 21, 1991.

David L. Henry, Ramsey & Henry, Tell City, for appellants-defendants.

Mark & Nona Rosenbaum, pro se.

ROBERTSON, Judge.

Waldemar and Melva Kissel appeal from an adverse bench trial judgment on Mark and Nona Rosenbaum's complaint to quiet title and for damages for breach of implied warranty of fitness for habitation. On appeal, they bring the following issues:

 I. Did the Court improperly enter a judgment against the Kissels as individuals when they were not parties as individuals to the transaction underlying this dispute, but were instead officers of the corporation that was a party to the transaction and which was not made a party to the litigation?

 II. Did the Court improperly enter a judgment against Kissels which should have been barred by the applicable statute of limitations?

We reverse.

The evidence most favorable to the Rosenbaums shows that the Kissels built and sold homes as a business. They eventually built a house in 1976 in Warrick County, Indiana and lived in it as their residence. On March 6, 1978, the Kissels formed Kissel Homes, Inc., a company they used to continue to build and sell houses. The Kissels were the only directors of this corporation. Waldemar Kissel was the president, and Melva Kissel was the secretary.

The Kissels sold their residence to Kissel Homes, Inc., in April of 1979. The Rosenbaums later negotiated with the Kissels to purchase the property. The parties reached an agreement whereby the Rosenbaums would borrow five thousand dollars ($5,000.00) from the Kissels so they could buy the house immediately. The Rosenbaums therefore executed a promissory note, secured by a real estate mortgage on the property, in that amount on August 7, 1979. The Rosenbaums then purchased the house on August 8, 1979, and Mark Rosenbaum repaid the loan of five thousand dollars ($5,000.00) just before closing with proceeds from a loan from his employer. Waldemar Kissel told Mark Rosenbaum he would return the original promissory note marked "PAID" but never did so. The warranty deed to the Rosenbaums lists Kissel Homes, Inc., as the grantor. The Kissels signed the warranty deed in their capacities as officers of the corporation.

On August 9, 1979, the day after closing, and within about one month thereafter, Mark Rosenbaum discovered damage to and defects in the house which were inherent in the construction. The brick facing on the front, back, and sides of the house had moved away from the structural wall. A major crack appeared in the brick facing and moved from the front to the back of the house. A gap existed between the wall and the brick facing on the walls. Certain strategically placed double moldings in the window and door frames, shrubs around the base of the house, and fascia along the top of the brick work all hid the gaps. The condition of the brick facing was such that it would likely fall if not repaired. The condition of these walls was caused by the virtual lack of footing in the foundation of the house when the Kissels built it. The footing for the house should have been at least eight inches but some parts of the foundation had no footing at all.

In addition, the heating and air conditioning system installed in the house prevented suitable heating or cooling of the structure. The downstairs unit had to be immediately replaced and the duct work under the house in the crawl space had to be repaired and insulated.

Waldemar Kissel was aware of the damage to the property before August 8, 1979 but failed to notify the Rosenbaums of the damage. Mark Rosenbaum immediately attempted to contact Waldemar and Melva Kissel to report the damage and recover

the paid promissory note but was unable to locate them in the State of Indiana. The Kissels were last residents of the State of Indiana in August of 1979. The Kissels owed much money to many persons when they left the State of Indiana. Eventually, many persons obtained judgments against them for debts and for inadequately built homes. Mark Rosenbaum wrote many letters to the Kissels in an attempt to contact them about the damage to his home and the costs of repair, and he believed some of them were delivered although most were returned. Waldemar Kissel even sent an unsigned check to the Rosenbaums for $17,000.00, with a note that said, "Ha, ha." Mark Rosenbaum had no other contact with the Kissels from the time of closing until they answered his complaint. However, he received correspondences from Melva Kissel's father after the Kissels had attempted to assign the paid promissory note to him.

Mark Rosenbaum decided not to pursue his breach of warranty claim, as the Kissels had many judgments against them and had left the State of Indiana. However, he eventually discovered the promissory note the Kissels had attempted to assign was a cloud on his title. In an attempt to remove this lien, he served the Kissels with notice by publication of his claim to quiet title. He was surprised to receive an answer; but when he obtained personal jurisdiction over the Kissels, he decided to amend his complaint and pursue his breach of warranty claim.

The trial court entered judgment in favor of the Rosenbaums for implied breach of warranty as follows:

> Well, from the evidence that I've heard, taken the plaintiff's Complaint, he's complaining about the workmanship of the builders of the house and according to your opening statement it was the Kissels that were the builders of the house, Waldemar Kissel and his wife, Melva Kissel, were builders of the house. And according to the evidence that I've heard today there were some latent defects that could not have been discovered from an ordinary and reasonable [sic], and the statute of limitations starts running after that. I have evidence that the brick work has to be done in the amount of $8,725. Mr. Rosenbaum testified that he spent $3,500 on air conditioning and heating system that was a latent effect [sic] and he spent $2,700 on duct work. So I will grant the plaintiff a judgment against Waldemar Kissel and Melva Kissel in the amount of $14,925....

\*　\*　\*　\*　\*　\*

> And that leaves a question as to whether [the note] has been paid or not. I have evidence that it has been paid by Mr. Rosenbaum, that he paid it accord and satisfaction. And so that wipes that note out. He has a judgment of $14,925 plus costs.

The trial court ordered and adjudged that the promissory note was null and void and did not constitute a lien or cloud upon the Rosenbaums' title and interest in the real estate, as it had been paid in full.

### I.

The trial court did not improperly enter a judgment against the Kissels as individuals for an act attributable to their corporation.

The Kissels first claim that the trial court improperly entered judgment against them as individuals for an act they performed as officers of their corporation. We remind them that our function is not to reweigh evidence or reassess the credibility of the witnesses. We will not set aside the fact-finding of the trial court unless it is clearly erroneous. The trial court will not be reversed on the evidence unless there is a total lack of supporting evidence or the evidence is undisputed and leads solely to a contrary conclusion. *Brancheau v. Weddle* (1990), Ind.App., 555 N.E.2d 1315.

In order to appropriately address this issue, we must discuss the Rosenbaums' theory of recovery. The Rosenbaums sued the Kissels for breach of implied warranty of fitness for habitation. Our supreme court first recognized this theory in *Theis v. Heuer* (1971), 149 Ind. App. 52, 270 N.E.2d 764, *transfer granted and opinion adopted*, (1972), 264 Ind. 1,

280 N.E.2d 300. That case abolished the rule of caveat emptor as applied to the immediate purchase of a new dwelling house from a builder-vendor. *Wagner Construction Co., Inc. v. Noonan* (1980), Ind.App., 403 N.E.2d 1144. The implied warranty of fitness for habitation does not require that the dwelling be rendered totally uninhabitable before there is a breach of the warranty; rather, breach of the warranty is established by proof of a defect of a nature which substantially impairs the use and enjoyment of the residence as a place of human habitation. *Id.*

Caveat emptor developed when the buyer and the seller were in an equal bargaining position and could readily be expected to protect themselves in the deed. Buyers of mass produced development homes are not on an equal footing with the building vendors and are therefore less able to protect themselves in the deed. *See Theis*, 264 Ind. at 9, 280 N.E.2d at 304 (*quoting Schipper v. Levitt & Sons, Inc.* (1964), 44 N.J. 70, 207 A.2d 314). The rule performed a disservice not only to the ordinary prudent purchaser but to the industry itself by lending encouragement to the unscrupulous, fly-by-night operator and purveyor of shoddy work. *Theis*, 264 Ind. at 8, 280 N.E.2d at 304 (*quoting Humber v. Morton* (1968), Tex., 426 S.W.2d 554). The ordinary home buyer is not in a position, with inadequate knowledge and opportunity, to make a meaningful inspection of the component parts of a residential structure and thereby discover its hidden defects. The purchase of a home is not a common transaction for the average home buyer, who should therefore be able to rely upon the expertise and skill of the builder that the the house is reasonably fit for its intended use. *Wagner*, 403 N.E.2d at 1147 (*quoting Moxley v. Laramie Builders, Inc.* (1979), Wyo., 600 P.2d 733). *See also, Vetor v. Shockley* (1980), Ind.App., 414 N.E.2d 575.

■ The supreme court then extended the protection of the implied warranty of fitness for habitation to a second or subsequent purchaser for latent or hidden defects which become manifest after the purchase and which are not discoverable by the subsequent purchaser's reasonable inspection. *Barnes v. Mac Brown and Co., Inc.* (1976), 264 Ind. 227, 342 N.E.2d 619. The standard to be applied in determining whether or not there has been a breach of the warranty is one of reasonableness in light of surrounding circumstances, which include the age of the home, its maintenance, and the use to which it has been put. *Id.* The burden is upon the claimant to show that the defect had its origin and cause in the original builder-seller. *Id.*

■ Notice of the breach of an implied warranty of fitness for habitation is a condition precedent to recovery. No particular form of notice is required, but the purchaser must at least inform the builder-vendor of the defect and give the builder-vendor a reasonable opportunity to cure or repair it. *Jordan v. Talaga* (1989), Ind.App., 532 N.E.2d 1174. The evidence supports the conclusion that the Rosenbaums gave notice of the defects to the Kissels, who then had many years to cure or repair them.

■ The Rosenbaums claimed the Kissels built the house with inherent defects in the construction. As noted, the evidence shows that the Kissels built and sold homes as a business and in fact built the house in question before they established Kissel Homes, Inc. in 1978. They sold the home to their corporation three years after they had built it; and the corporation, in turn, sold it to the Rosenbaums. Nevertheless, the Kissels were the original builder-vendors of the property, not the corporation.

Regardless of whether the Kissels were the first owners and the corporation was an intervening owner of the house, the Rosenbaums are at least subsequent purchasers. The Kissels built and sold houses as a business and were thus in a better position than the Rosenbaums to make sure the house was fit for human habitation. They therefore implicitly warranted that the house they had constructed was fit for that purpose. As at least subsequent purchasers of the property, the Rosenbaums were protected by the warranty from latent or hidden defects which became manifest after the purchase and

which were not discoverable by reasonable inspection.

The house was three years old when the Rosenbaums bought it, and it had been used as a residence. The trial court found the defects in it were latent or hidden until after the purchase and were not discoverable by reasonable inspection by the Rosenbaums. The trial court also found the defects had their origin and cause in the original builder-vendor. This was the Kissels, not their corporation. The trial court also implicitly found the defects were of such a nature that they substantially impaired the Rosenbaums' use and enjoyment of the residence as a place of human habitation. We do not reweigh the evidence. These findings are not clearly erroneous but are supported by substantial evidence. The trial court committed no error when it determined the Rosenbaums could properly recover from the Kissels individually, as opposed to their corporation, for breach of implied warranty of fitness for habitation.

## II.

The statute of repose barred the claim.

The Kissels contend the statute of limitation barred the claim of breach of implied warranty of fitness for habitation. They do not appeal the trial court's judgment to quiet title in the Rosenbaums due to payment of the promissory note. We therefore restrict our review to the breach of warranty issue.

■ The Kissels and the Rosenbaums both claim Ind.Code 34-4-20-2 is the applicable statute of limitations in this case. That statute states:

No action to recover damages whether based upon contract, tort, nuisance, or otherwise, for:

(a) any deficiency, or alleged deficiency, in the design, planning, supervision, construction, or observation of construction of an improvement to real property;

(b) an injury to property, either real or personal, arising out of any deficiency; or

(c) injury to the person, or for wrongful death, arising out of any such deficiency;

shall be brought against any person who designs, plans, supervises, or observes the construction of, or constructs an improvement to real property, unless the action is commenced within the earlier of ten (10) years from the date of substantial completion of the improvement or twelve (12) years after the completion and submission of plans and specifications to the owner if the action is for deficiency in design.

While the parties refer to this section as a statute of limitation, we note that it is actually a statute of repose. *Berns Construction Company v. Miller* (1986), Ind. App., 491 N.E.2d 565, *summarily affirmed on transfer*, (1987), Ind., 516 N.E.2d 1053. A statute of limitation requires a lawsuit to be filed within a specified period of time after a legal right has been violated. In contrast, a statute of repose is designed to bar actions after a specified period of time has run from the occurrence of some event other than the injury which gave rise to the claim. A statute of repose might theoretically bar a claim filed within the period allowed by the applicable statute of limitation. *Raithaus v. Saab–Scandia of America* (1989), Utah, 784 P.2d 1158. A statute of limitation extinguishes a remedy while a statute of repose may bar a cause of action even before it arises. In practical terms, a statute of repose marks the boundary of a substantive right whereas a statute of limitation interposes itself only procedurally to bar a remedy after a substantive right has vested. *Reynolds v. Porter* (1988), Okl., 760 P.2d 816. A statute of limitation implicitly seeks to punish those who sleep on their rights, while a statute of repose operates to bar some recoveries no matter how diligently the claim may have been asserted. *Id.* at 820, n. 9 (*quoting Smith v. Westinghouse Electric Corp.* (1987), Okl., 732 P.2d 466, 468, n. 11). *See also, Bennet v. Bennet* (1977), 172 Ind.App. 581, 361 N.E.2d 193.

■ A statute of repose constitutes a substantive definition of rights rather than

a procedural limitation provided by a statute of limitation. *See Bolick v. American Barmag Corp.* (1982), 306 N.C. 364, 293 S.E.2d 415; *Berns,* 491 N.E.2d at 570–571. Inasmuch as the Kissels point to no applicable *statute of limitations* for the Rosenbaums' use of the real property for habitation, they have failed to preserve this procedural issue for our review. *See Bennet,* 172 Ind.App. at 585–587, 361 N.E.2d at 196–197. Nevertheless, they substantially raise the issue of the *statute of repose.* We will therefore restrict our review to the substantive issue and the authority they cite, namely I.C. 34–4–20–2.

■ This Court also stated in *Jordan,* 532 N.E.2d 1174, that I.C. 34–4–20–2 is known as a statute of repose. The Court further stated:

> It sets a cap on the maximum time limit allowed for the commencement of an action without expanding the regular statute of limitation or reasonable time period for providing notice applicable to the underlying cause of action. The statute of repose simply provides that suit must be commenced within 10 years measured from the substantial completion of an improvement regardless of when the cause of action accrues. Therefore if defects are discovered or an injury occurs 10 years after the date of substantial completion, a party is effectively barred from the suit.

532 N.E.2d at 1189 (*citing Berns,* 491 N.E.2d 565, *affirmed* 516 N.E.2d 1053).

The Kissels built the house in question in 1976. The commencement of the Rosenbaums' suit in 1990 appears, at first blush, to have been barred because it was filed four years after the above statute of repose would have run in 1986. The Rosenbaums claim, however, that I.C. 34–1–2–6(a) tolled the statute of repose:

> The time during which the defendant is a nonresident of the state shall not be computed in any of the periods of limitation except during such time as the defendant by law maintains in the state of Indiana an agent for service of process or other person, who, under the laws of

the state of Indiana, may be served with process as agent for the defendant.

The Rosenbaums also claim that the Kissels committed fraud when they hid the defects in the house and that this fraud tolled the limitations statute. We will first address the claim based upon the statute.

Statutes in derogation of the common law will be strictly construed. *Stayner v. Nye* (1949), 227 Ind. 231, 85 N.E.2d 496. No limitations of actions existed at common law; all such limitations are of statutory origin. *Sherfey v. City of Brazil* (1938), 213 Ind. 493, 13 N.E.2d 568. Because of this, one would expect limitations laws to be looked upon with disfavor. However, because of the security they afford, the courts are, except in cases against the government, inclined to construe limitations laws liberally, so as to effect the intention of the legislature. *See Shideler v. Dwyer* (1981), 275 Ind. 270, 417 N.E.2d 281. Therefore, we will not only broadly construe the statute of repose in this case but we will also narrowly construe the provision for a nonresident defendant.

Indiana courts have stated that statutes of limitations are statutes of repose. *Short v. Texaco, Inc.* (1980), 273 Ind. 518, 406 N.E.2d 625, *probable jurisdiction noted,* 450 U.S. 993, 101 S.Ct. 1693, 68 L.Ed.2d 192 *affirmed* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738; *Kemper v. Warren Petroleum Corp. Inc.* (1983), Ind.App., 451 N.E.2d 1115. This is true in that both the statute of limitations and the statute of repose operate to lay a claim to rest; however, as noted above, the statute of limitations procedurally bars a vested remedy while the statute of repose may bar a substantive right which may not yet have vested. Regardless, the purpose of each, meant to lay claims to rest, is similar even if the policies behind each are different.

As noted, the statute of limitations is meant to bar stale claims, whereas the statute of repose may bar a claim no matter how diligently pursued. The statute of repose appears to bar claims, not because of disappearance of evidence but because of the passage of a stated amount of time within which the legislature has, for public policy reasons, deemed it appropriate to

bring the claim, regardless of when the claim accrues. *Cf. Sherfey*, 213 Ind. at 508, 13 N.E.2d at 574 (statutes of limitation are founded on state policy and are regarded as statutes of repose; the Legislature, out of consideration for the public welfare, may fix periods within which actions may be brought, without making any exceptions whatever). In this manner, the statute of repose also advances the statute of limitations policies of the peace, welfare, convenience, necessity, and well-being of society. *See Short*, 406 N.E.2d at 629; *Craven v. Craven* (1913), 181 Ind. 553, 103 N.E. 333, *reh. denied*, (1914), 181 Ind. 553, 105 N.E. 41.

We conclude the provision for the Kissels' nonresidence in the State of Indiana did not extend the period of limitation of the pure statute of repose in question. The Legislature intended the statute of repose to impose a maximum time limit beyond which an action for damages may not be maintained, regardless of when the cause of action accrues. *Berns*, 491 N.E.2d at 570. As we construe the provision for a nonresident defendant, we conclude the Legislature meant it to apply only to the statutes of limitation and not to this statute of repose. The same is true about the Rosenbaums' claim that fraud on the part of the Kissels tolled the limitations period. The actions of the Kissels, through which they hid the defects of the house, did not affect the repose statute's maximum time limit beyond which the action may not be maintained.

Statutes of repose are based upon considerations of the economic best interests of the public as a whole and are substantive grants of immunity based upon a legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time limit beyond which liability no longer exists. Thus, a statute of repose is typically an absolute time limit beyond which liability no longer exists and is not tolled for any reason because to do so would upset the economic balance struck by the legislative body. *First United Methodist Church v. U.S. Gypsum Co.* (4th Cir.1989), 882 F.2d 862, *cert. denied*, (1990), — U.S. —, 110 S.Ct. 1113, 107 L.Ed.2d 1020.

Society benefits when claims and causes are laid to rest after having been viable for a reasonable time. When causes of action are extinguished after such time, society generally may continue its business and personal relationships in peace, without worry that some cause of action may arise to haunt it because of some long-forgotten act or omission. This is not only for the convenience of society but also due to necessity. At that point, society is secure and stable. This is the reason we construe the statute of repose so broadly and the provision for nonresident defendants so narrowly.

The Rosenbaums filed their suit more than ten years after substantial completion of the home. Although the claim of implied warranty of fitness for habitation may previously have had merit, that cause of action was substantively barred as outside the statute of repose. The trial court's judgment to quiet title in the Rosenbaums due to full payment of the five thousand dollar ($5,000.00) promissory note remains unaffected by our decision.

Judgment reversed.

RATLIFF, C.J., concurs.

SULLIVAN, J., concurs in result.