Louise Noel MALACHOWSKI, Nancy Noel Kosene, H. Jerome Noel, Jr., Irma Noel Rand, William H. Noel, Carol Noel Madrick, William H. Failey, Jr., and John Noel Failey, Appellants (Plaintiffs Below),

v.

BANK ONE, INDIANAPOLIS, Formerly American Fletcher National Bank & Trust Company, Appellee (Defendants Below).

No. 49S02–9204–CV–271.

Supreme Court of Indiana.

April 14, 1992.

Henry J. Price, Jennifer L. Graham, Price & Barker, Indianapolis, for appellants.

Richard E. Deer, Ahrend J. Abel, Barnes & Thornburg, Indianapolis, for appellee.

ON PETITION TO TRANSFER

KRAHULIK, Justice.

The beneficiaries of a trust, Louise Noel Malachowski, Nancy Noel Kosene, H. Jerome Noel, Jr., Irma Noel Rand, William H. Noel, Carol Noel Madrick, William H. Failey, Jr., and John Noel Failey (Plaintiffs–Appellants below) (hereinafter "Beneficiaries"), seek transfer after the Court of Appeals affirmed summary judgment against them and in favor of the trustee, Bank One, Indianapolis (Defendant–Appellee below) ("Bank One"). *Malachowski v. Bank One, Indianapolis* (1991), Ind.App., 570 N.E.2d 65. The Beneficiaries' claims arise from Bank One's sales of Eli Lilly & Company common stock ("Lilly stock") held by the trust. We grant transfer because we find questions of fact precluding summary judgment on the issues before us:

(1) Whether the Beneficiaries' claim is barred by the statute of limitations;

(2) Whether the trustee committed a breach of trust;

(3) Whether Bank One should be removed as Trustee; and

(4) Whether the Trust corpus should be divided.

### Facts

Plaintiffs are Beneficiaries and Bank One [1] is Trustee of an irrevocable intervivos trust ("the Trust") created by Harry S. Noel in 1935. Income from the Trust was to be paid to the settlor's wife during her lifetime. Upon her death, income was to be paid in equal shares to the settlor's three children, Harry J. Noel, Barbara L. (Noel) Seawell, and Carol A. (Noel) Failey, or to their surviving issue. The Trust is to terminate on the death of the survivor of these three children with the corpus to be distributed to the surviving issue of those children. Two of the settlor's children have died. Harry J. Noel died in 1986, leaving six children, H. Jerome Noel, Jr., Nancy (Noel) Kosene, William H. Noel, Carol (Noel) Madrick, Louise (Noel) Malachowski, and Irma (Noel) Rand, all of whom are plaintiffs in this action. Carol A. (Noel) Failey died in 1961, leaving two children, John Noel Failey and William H. Failey, Jr., both of whom are plaintiffs here. Barbara L. (Noel) Seawell is still living, and has two children. Neither Mrs. Seawell nor her children are parties to this action.

When the Trust was created, its only asset was life insurance policies payable on the death of the settlor. The Trustee was authorized to purchase property from the settlor's estate and was totally indemnified from any liability for those transactions. The settlor also had established a testamentary trust in his Will and named Bank One as trustee. At the settlor's death, the testamentary trust was funded with Lilly stock.

The settlor died in 1943. Proceeds from the life insurance policies held by the Trust were lent to the estate. That loan was repaid in 1947 with 1,564 shares of Lilly stock valued at $35,000. From that time until 1972, the corpus of the Trust consisted entirely of Lilly stock. In 1972, Bank One began selling Lilly stock to diversify the Trust holdings apparently over the objections of some of the settlor's children. At the time diversification began, the value of the Lilly stock and Trust corpus held by the Trust was $2,400,000. Sales of the stock continued intermittently for eight years until December 1985. The Beneficiaries assert that the value of the corpus in 1985, if no Lilly stock had been sold, would have been approximately $360,000 greater.

---

1. Bank One was previously American Fletcher National Bank and Trust Company, which in turn was the successor to the Fletcher Trust Company, the original trustee of the Trust.

In February 1988, this action was filed against Bank One. The Beneficiaries sought various forms of relief, including the restoration of Lilly stock sold by Bank One to the Trust, removal of Bank One as Trustee, and division of the Trust corpus into three shares. Bank One moved for summary judgment. The trial court found that the sale of Lilly stock and Bank One's refusal to divide the Trust into separate portions did not violate the terms of the Trust or constitute any breach of trust. The trial court did not decide whether the Beneficiaries' claim was barred by the statute of limitations.

The Beneficiaries appealed. The Court of Appeals held that the action was barred by the statute of limitations and did not address the substance of the claims presented to the trial court. The Beneficiaries now seek transfer. Additional facts will be added as necessary.

## Standard of Review

■ This matter is before us on the propriety of the grant of summary judgment and, therefore, we apply the same standard applicable in the trial court. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 994-5. We must consider the pleadings and evidence sanctioned by Ind. Trial Rule 56(C) without deciding its weight or credibility. *Id.* Rational assertions of fact and reasonable inferences therefrom are deemed to be true. *Id.* Any doubt about the existence of a fact or the inference to be drawn from it is to be resolved in favor of the nonmoving party. *Id.* Only if such evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law should summary judgment be affirmed. *Id.*

## Statute of Limitations

The parties dispute both the applicable limitation period and whether the claim was filed within that period. The Court of Appeals decided that the claims were governed by a two-year limitation period that expired at the latest in December 1987, two years after the last sale of Lilly stock from the Trust. We find fact issues precluding summary judgment on whether the claim is time-barred.

■ The Beneficiaries first argue that the applicable limitation period is three years after the final accounting as provided in *Ind. Code* § 30-4-6-12. Because no final accounting has been made, they reason, their claim is not barred. The statute provides:

Unless previously barred by adjudication, consent or limitation, any right against a trustee for a breach of trust shall be barred as to any beneficiary who has received a final account or other statement fully disclosing the matter and showing termination of the trust relationship between the trustee and the beneficiary unless a proceeding to assert the right is commenced within three years after receipt of the final account or statement.

Relying on *Mack v. American Fletcher Nat'l. Bank* (1987), Ind.App., 510 N.E.2d 725, 738, *trans. den.*, for the proposition that the statute implies the existence of a statute of limitations apart from the three-year limitation period that begins after a final accounting is submitted, the Court of Appeals rejected the Beneficiaries' argument. The court determined that claims for breach of trust are subject to a two-year limitation period because a breach of trust action is premised upon an injury to the interest of the beneficiaries in the trust and, as such, is an injury to personal property. We agree.

■ Accepting the Beneficiaries' argument would have the practical effect of allowing trust beneficiaries to refrain from filing any claim they might have against a trustee until a final account is rendered. We do not perceive that this is the intent of the legislature as expressed in *Ind. Code* § 30-4-6-12. By providing for a three-year statute of limitations for breach of trust claims "unless previously barred by ... limitation," the legislature recognized that other limitation periods may also be applied to such claims. Thus, we hold that this statute provides for a three-year limitation period after a final account, but that the statute does not extend the limitation

period for an action against a trustee for breach of trust which accrues before a final account is given.

Having decided that *Ind. Code* § 30–4–6–12 is not the exclusive statute of limitation applicable to such actions, we must now determine what statute governs. The Court of Appeals properly analyzed the nature of a breach of trust claim in *Mack* and determined that such actions are torts. The court in *Mack* continued its analysis and concluded that the statute of limitations applicable to a breach of trust claim against a trustee is the two-year statute that controls claims for injuries to personal property. We agree with this conclusion and the legal reasoning that leads to it.

■ The question in the present case, therefore, becomes: When did the breach of trust action accrue? By letter dated November 19, 1971, a trust officer advised the Beneficiaries that Bank One had been "mandated by the National Bank Examiner's Audit Staff and by our own Internal Trust Committee to either diversify [the 100 per cent concentration of Lilly stock in the Trust] or seek indemnity from all interested parties against any loss due to its retention." Bank One began selling Lilly stock in 1972. Sales continued through 1980, and were stopped for a period of time until 1984, when they were reinstituted. The final sale occurred in December 1985. In 1987, after the death of H. Jerome Noel, Sr., his son, H. Jerome Noel, Jr., a party herein, asked Bank One to furnish a copy of the National Bank Examiner's audit which mandated the diversification. In July 2, 1987, Mr. Noel was advised by a trust officer that no such documentation was in the account file. The complaint was filed February 22, 1988.[2] Based on these facts, the Beneficiaries contend that the limitation period was tolled by Bank One's misrepresentation regarding the existence of the mandate.

On the other hand, Bank One urges and the Court of Appeals agreed that because the last disputed sale of Lilly stock occurred in December 1985, the statutory period expired no later than two years after the last sale, in December 1987. The Court of Appeals concluded that regardless of whether Bank One fraudulently presented the "mandate" from the National Bank Examiner as one reason for diversification of the Trust, the Beneficiaries failed to use reasonable care and due diligence to discover this misrepresentation. The court reasoned that Bank One's conduct in beginning, and then stopping, and later restarting sales of the Lilly stock "surely would place a reasonable person on notice that there was no mandate to diversify." 570 N.E.2d at 68. Concluding that "the undisputed facts in this case show no reasonable care and due diligence were used by the Beneficiaries to detect the alleged fraud," the court held that Bank One was entitled to summary judgment on the statute of limitations. We cannot agree.

■ *Ind. Code* § 34–1–2–9[3] operates to delay accrual of an action and the commencement of the limitations period when the defendant has concealed the existence of the cause of action from the plaintiff. *See also Guy v. Schuldt* (1956), 236 Ind. 101, 108, 138 N.E.2d 891, 894. Usually, to invoke the protection provided by this statute, the wrongdoer must have actively concealed the cause of action and the plaintiff is charged with the responsibility of exercising due diligence to discover the claims. *Hinds v. McNair* (1955), 235 Ind. 34, 45, 129 N.E.2d 553, 560. However, where the parties are in a fiduciary relationship, such as trustee/beneficiary, the concealment of the claim need not be active. A mere failure to disclose, when there is a duty to disclose, may be sufficient to toll the statute. *Guy v. Schuldt*, 236 Ind. at 109, 138 N.E.2d at 895.

---

**2.** In September 1989, the Beneficiaries received a Certification of Non–Existence from the Controller of Currency indicating that no order or mandate had been issued to Bank One requiring it to diversify the Trust assets.

**3.** *Ind. Code* § 34–1–2–9 provides: "If any person liable to an action shall conceal the fact from the knowledge of the person entitled thereto, the action may be commenced at any time within the period of limitation after the discovery of the cause of action."

The Beneficiaries assert that they relied on Bank One's representation that diversification was required by a governmental agency. We do not perceive that recess from diversification for a period of time necessarily compels the conclusion that the Beneficiaries did not exercise due diligence in discovering their putative claim. Having been advised by Bank One that a federal agency required diversification of the Trust, questions of fact exist as to whether the Beneficiaries' reliance on that representation was reasonable. We cannot conclude as a matter of law that in the exercise of ordinary diligence a beneficiary would have begun at an earlier date to investigate whether the Trustee had lied. As Judge Sullivan noted in his dissenting opinion, the notion that the Beneficiaries were not entitled to rely upon the good faith of Bank One, but were instead under some duty to be suspicious of Bank One's activities and to investigate whether Bank One's representations were true, "would seem to undercut the very essence of a trust relationship." 570 N.E.2d at 69.

Even if we were to hold that Bank One did not conceal from the Beneficiaries a potential claim within the meaning of *Ind. Code* § 34-1-2-9, Bank One would still not be entitled to summary judgment. The statute applied to claims for injury to personal property, *Ind. Code* § 34-1-2-2, provides that the limitation period begins to run only after the "cause of action has accrued." Courts determine when a cause of action "accrues." *Barnes v. A.H. Robins Co., Inc.* (1985), Ind., 476 N.E.2d 84, 85. As we held most recently in *Wehling v. Citizens Nat'l. Bank* (1992), Ind., 586 N.E.2d 840, a cause of action for a personal injury claim accrues and the statute of limitations begins to run when the plaintiff knew, or in the exercise of ordinary diligence could have discovered, that an injury had been sustained as a result of the tortious act of another. *Id.* at 843. We see no reason why this standard should not also apply to the Beneficiaries' claim for injury to personal property. Accordingly, summary judgment on the expiration of the statute of limitations was inappropriate.

*Breach of Trust*

The Beneficiaries' claim for breach of trust is premised on the argument that Bank One wrongfully sold the Lilly stock. Bank One responds that it sold the Lilly stock to comply with the "prudent investor" rule and, having complied with the rule, it cannot be subject to liability for breach of trust.

The "prudent investor" rule has been made applicable by statute in Indiana and provides in part:

> In acquiring, investing, reinvesting, exchanging, retaining, selling and managing property for any trust heretofore or hereafter created, the trustee thereof shall exercise the judgment and care under the circumstances then prevailing which men of prudence, discretion, and intelligence exercise in the management of their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital.

*Ind. Code* § 30-4-3-3(c). Bank One asserts that absent an explicit direction in the trust instrument, a trustee is not required to maintain all of the assets of the trust in a single equity security. Bank One also suggests that absent such explicit direction, the prudent investor rule mandates diversification under the circumstances here.

Applying the prudent investor rule requires consideration of the particular factual circumstances in an individual case. As the *Restatement, Second, of Trusts* § 228 page 541 states: "Except as otherwise provided by the terms of the trust, the trustee is under a duty to the beneficiary to distribute the risk of loss by a reasonable diversification of investments *unless under the circumstances it is prudent not to do so.*" (Emphasis supplied.) We do not agree with Bank One that as a matter of law diversification is positively required under the prudent investor rule.

The Beneficiaries present several circumstances that raise questions concerning the propriety of diversification. First, they claim that Bank One's motive for sell-

ing the Lilly stock was a self-serving attempt to increase the fees chargeable to the Trust and to use cash from the sale of the Lilly stock for investment in Bank One's common trust funds. The Beneficiaries point to internal memoranda of Bank One trust officers that discuss increasing fees charged to the Trust and investment in Bank One's common fund, but do not discuss the best interests of the Beneficiaries.

In addition, the Beneficiaries point to Bank One's insistence that all Beneficiaries sign an indemnity agreement before Bank One would consider not undertaking the diversification program. The effect of the indemnity agreement was to hold Bank One harmless for not diversifying the stock concentration, but it did not require Bank One to refrain from selling the Lilly stock.[4] The Beneficiaries argue that because of the high duty of loyalty owed them by their trustee and that the indemnity agreement was written totally in favor of Bank One, they are entitled to an inference that Bank One was acting other than in their best interest.

The Beneficiaries also claim that by diversifying the Trust, Bank One failed to preserve Trust assets as required by *Ind. Code* § 30-4-3-6(b)(4) because the sales of stock resulted in sizeable capital gains tax levied on the Trust corpus. Evidence showed that Bank One was aware of the significant reduction in the Trust corpus that would occur because of the 30% federal income tax imposed as a result of the sale of the stock. Income tax returns show, for example, that in 1972, when diversification began, the Trust paid more than $71,000 in income tax, where, in years before, the Trust had paid none. The Beneficiaries argue that the effect of the stock sales was to permanently reduce the value of the corpus and that this creates a question of fact as to whether Bank One adequately considered preservation of Trust assets.

Finally, the Beneficiaries assert that Bank One's misrepresentation as to the existence of a mandate from the National Bank Board Audit staff requiring diversification, standing alone, establishes a question of fact as to whether the diversification of the Trust was carried out for an improper purpose.

We conclude that the foregoing points raised by the Beneficiaries are sufficient to establish genuine issues of material fact precluding summary judgment for Bank One. Of course, we are unable to predict whether the Beneficiaries ultimately will be successful in establishing their claim against Bank One, but we conclude that our rules of procedure require that they have an opportunity to attempt to do so.

■ On one part of the claim we find that Bank One is entitled to summary judgment. The Beneficiaries argue that Bank One breached its fiduciary duty when it failed to follow the express intent of the settlor that the Lilly stock be retained in the Trust. Bank One counters that the Trust contains no restrictions on it with respect to the Lilly stock.

■ The primary goal in construing a trust document is to ascertain and effectuate the intent of the settlor. *Ind. Code* § 30-4-1-3; *Powell v. Madison Safe Deposit & Trust Co.* (1935), 208 Ind. 432, 448, 196 N.E. 324, 331. Where the terms of a trust document are not ambiguous, we look only to the trust document to determine the settlor's intent, which may be determined as a question of law for the Court. *Colbo v. Buyer* (1956), 235 Ind. 518, 524, 134 N.E.2d 45, 49. This Court is not "at liberty

---

**4.** The indemnity agreement provided in part: "In order to induce you to continue to hold this Trust invested exclusively in Eli Lilly and Company common stock, we jointly and severally agree to indemnify you and hold you harmless against any loss or expense arising out of the claims of any persons who may allege that they have been damaged by your retention of such a stock ... Your continued retention of the Eli Lilly and Company stock in this Trust will be sufficient evidence that such retention is in reliance upon our indemnities and you need not evidence your acceptance of our indemnities in any other manner. Furthermore, your acceptance of these indemnities shall not be construed as imposing a contractual liability upon you to retain the stock if you should determine that all or any of it should be sold despite the indemnities."

to rewrite the trust agreement any more than it is at liberty to rewrite contracts." *Id.,* 235 Ind. at 525, 134 N.E.2d at 49. When a trust instrument must be construed by the court, then we attempt to discern the settlor's intent in light of the facts and circumstances existing at the time the instrument was executed. *Matter of Walz* (1981), Ind.App., 423 N.E.2d 729, 734 (citing 76 Am.Jur.2d Trusts, § 17, p. 266 (1975)).

The Beneficiaries argue that, at a minimum, the evidence gives rise to an inference that the Trust instrument is ambiguous and that extrinsic evidence bearing on the settlor's intent should be considered. The Trust instrument contains no specific restriction on the sale of Lilly stock. The settlor's Will in existence at the time the Trust was created provided that Lilly stock held in the testamentary trust was not to be sold. The Beneficiaries assert that this Will is the only evidence in the record of the settlor's intent regarding retention of the Lilly stock at the time the Trust was created. However, that Will was revoked and replaced with one in 1942 which required approval of certain "trust advisors" before Lilly stock could be sold from the testamentary trust created in this latter Will. The 1942 Will made no specific reference to disposition of Lilly stock from the Trust at issue. At least two letters from Bank One trust officers suggest that Bank One believed, at least at the time the letters were written, that the settlor intended the Trust to retain the Lilly stock.[5]

We conclude the settlor's intent was clearly expressed in the Trust instrument which contained no restrictions, other than those imposed by law, on the Trustee's selling Lilly stock held by the Trust. We find nothing in the record before us suggesting that the settlor intended to have the provisions of his Will and testamentary

trust imposed on the intervivos Trust at issue. Even if the letters written by Bank One trust officers did reflect the interpretation of the Trust instrument that the Beneficiaries ascribe to them, that belief is legally irrelevant where, as here, the letters were written years after the settlor's death. It is the settlor's intent, not the trustee's intent, that controls, and we find no cases suggesting that the Trustee's belief as to the meaning of a trust has any significance when the trust document itself is not ambiguous. Although in some circumstances the interpretation of documents placed on them by the parties may be legally relevant, that is not the case here.

The clear terms of the Trust gave Bank One power to "invest and reinvest" the assets of that Trust. This language grants Bank One the power to purchase assets with the proceeds, dispose of the assets so purchased, and purchase additional ones, within its prescribed duties as Trustee. We find no provision in the Trust requiring the Trustee to retain any particular assets, and conclude that the terms of the Trust are clear and, as a matter of law, may not be varied by extrinsic evidence. *Alig v. Levey* (1942), 219 Ind. 618, 624, 39 N.E.2d 137, 139.

### Removal of Bank One as Trustee

The Beneficiaries also sought removal of Bank One as Trustee, at least in part on account of the alleged misrepresentation of the mandate from the National Bank Examiners Audit staff to diversify the Trust holdings. Neither the order of the trial court nor the majority opinion of the Court of Appeals specifically address this issue. The Beneficiaries urge that, if proven, the alleged misrepresentation gives rise to the inference that Bank One breached its fiduciary duty to them.

---

5. In a letter dated October 14, 1952, a trust officer advised an attorney for the Beneficiaries, in part: "We believe that the 1,564 shares of Eli Lilly and Company non-voting common stock, the stock held under the agreement, must be held until after the death of all of the three (3) Noel children." Another letter written in 1963 by the same trust officer to the Beneficiaries, stated in part: "We have been holding Eli Lilly and Company common stock as the principal asset in the Trust under your father's Will and the Trust under agreement—the stock in the agreement trust was purchased with insurance proceeds from your father's estate in accordance with his estate planning. We, of course, will continue to hold this Lilly stock until a majority of the advisers direct us to sell."

In his dissenting opinion below, Judge Sullivan correctly noted that the issue of Bank One's removal as Trustee had not been resolved when he wrote, "[a] trier of fact may have been permitted to determine from the evidence that in making misrepresentations to the Beneficiaries as to federal examiners' orders to diversify, the Bank had so jeopardized its trust relationship as to require removal." 570 N.E.2d at 69. We agree. As Chief Justice Cardozo wrote years ago:

> Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions.... Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd.

*Meinhard v. Salmon* (1929), 249 N.Y. 458, 464, 164 N.E. 545, 546; *see also Massey v. St. Joseph Bank and Trust Co.* (1980), Ind.App., 411 N.E.2d 751, 754. Bank One was not entitled to summary judgment on this claim.

### Division of Trust

■ Finally, the Beneficiaries seek review of the denial of their request that the Trust be divided into separate shares. The Beneficiaries argue that they would be entitled to such relief if they can establish that Bank One failed to administer the Trust solely in the interest of the Beneficiaries and to treat multiple beneficiaries impartially as required by *Ind.Code* § 30-4-3-6.

We find no authority for division of the Trust corpus under these circumstances. Neither the Trust instrument nor Indiana statutes make provision for such a division. Similarly, we find no Indiana cases sug-

gesting that division of the corpus is an appropriate remedy for a breach of trust. Although we need not decide whether it is ever possible to split a trust in the manner that the Beneficiaries propose, we perceive no basis for doing so here. If Bank One breached its duties to the Beneficiaries, then a remedy for such a breach is already provided whether in the form of removal of Bank One as Trustee or money damages or both. If no breach is established, then there would appear to be no grounds upon which to divide the Trust. Accordingly, we hold the trial court properly granted summary judgment to Bank One on this issue.

### Conclusion

Accordingly, we grant transfer, vacate the opinion of the Court of Appeals, reverse the trial court's entry of summary judgment, and remand this case for further proceedings consistent with this opinion.

DeBRULER, GIVAN and DICKSON, JJ., concur.

SHEPARD, C.J., not participating.