SHULTZ–LEWIS CHILD & FAMILY SERVICES, INC., f/k/a Shultz–Lewis Home and School, Inc., Lester Allen and Rodney Grantham, Appellants–Defendants,

v.

Jane F. DOE, Jane I. Doe, Appellees–Plaintiffs,

and

Church of Christ, Appellee–Defendant.

No. 64A03–9107–CV–223.

Court of Appeals of Indiana, Third District.

Dec. 8, 1992.

Rehearing Denied Feb. 18, 1993.

Mark A. Lienhoop, Gene M. Jones, Newby, Lewis, Kaminski & Jones, La Porte, G. Anthony Bertig, James V. Tsoutsouris & Assoc., Valparaiso, for appellants-defendants.

Jeffrey R. Anderson, Reinhardt & Anderson, St. Paul, Minn., Carol J. Bradley, John E. Hughes, Hoeppner, Wagner & Evans, Valparaiso, for appellees-plaintiffs.

GARRARD, Judge.

This is an interlocutory appeal from a trial court's denial of defendants' motions for summary judgment in a personal injury action. We affirm and remand for further proceedings.

In approximately 1960 plaintiffs, Jane I. Doe, age 9, and Jane F. Doe, age 8, were placed as wards and residents of the defendant Shultz–Lewis Child & Family Services, Inc. (Shultz–Lewis) by the State of Indiana. Jane I. Doe was placed there after her mother had been in an accident and gone into a coma. She was a ward and resident of Shultz–Lewis from 1960 through approximately 1967 and again from 1967 through 1969. Jane F. Doe was placed there because her divorced parents had essentially abandoned her and she remained there from 1960 through approximately 1966.

In April of 1962, Rodney Grantham, an ordained minister of the Church of Christ,

was hired and employed as the activities director at Shultz–Lewis. He was there until 1967. During his employment at Shultz–Lewis, plaintiffs allege that he sexually abused and exploited them on numerous occasions, including repeated acts of sexual intercourse. Furthermore, Jane I. Doe alleges that he impregnated her when she was approximately fourteen years old, and Jane F. Doe alleges she was impregnated by him at twelve years of age. Plaintiffs allege Grantham gave them pills containing quinine which caused vomiting, diarrhea and bleeding. Plaintiffs contend the pills were given to induce abortions and they contend that the pills did cause abortions. Plaintiffs also allege they were sexually abused by defendant Lester Allen, the minister and superintendent at Shultz–Lewis who worked there from September 1962 to January 1966.

Jane I. Doe alleges the years of sexual abuse caused her to develop severe psychological and physical distress, which manifested itself in the form of repression, asthmatic attacks, nightmares and self-blame. She contends that through these coping mechanisms, she was unable to perceive or know that she had suffered injury as a result of the sexual abuse. In January 1990, Jane I. Doe alleges she spoke to Grantham and he admitted that the abuse took place hundreds of times. At that time, she recalled only two occasions and contends she repressed the other occasions and had no ability to remember them. In June 1990 she claims she suffered from flashbacks but that she still does not remember much of her childhood. Until 1990, she claims she was unable to recall and/or believe that the incidents of sexual abuse had occurred.

Jane F. Doe alleges that the years of sexual abuse and the circumstances under which it occurred caused her to develop symptoms of severe psychological distress, including great shame, embarrassment, guilt, self-blame, denial, depression, and ultimately disassociation from her experiences. She contends that through these coping mechanisms she was unable to perceive or know that she had suffered damage due to the sexual abuse. In February 1990, Jane F. Doe contends she was suffering from intense psychological distress, including flashbacks to the sexual abuse, sleeping problems, and sexual and marital problems. She contends that it was then, for the first time, she began discovering that many of her unbelievable memories were actually true. Still unsure about the memories, Jane F. Doe alleges she decided to confront Grantham. In March 1990, Jane F. Doe and her husband met Grantham and Grantham's therapist, during which time Grantham admitted sexually abusing Jane F. Doe and giving her medicine that would create a strong possibility of inducing an abortion. Jane F. Doe began treatment in 1990 with psychologist Jane Scully, who asserts the opinion that Jane F. Doe did not ascertain her injuries prior to 1990.

As a result, plaintiffs filed suit on August 16, 1990, alleging personal injuries resulting from the sexual abuse in the 1960's when both plaintiffs were minors in the custodial care and control of defendants. Specifically, plaintiffs brought claims of sexual battery, clergy malpractice, breach of fiduciary duty, and intentional infliction of emotional distress against Grantham and Allen. Their claims against defendant Shultz–Lewis are based on the theories of *respondeat superior*, negligent hiring, negligent supervision, and negligent retention. Plaintiffs seek compensatory and punitive damages from the defendants.

On October 5, 1990 defendant Shultz–Lewis filed an answer in which the statute of limitations was raised as an affirmative defense and discovery was conducted. On November 27, 1990 defendants filed motions for summary judgment with supporting memoranda and affidavits, alleging that plaintiffs' claims were barred by the statute of limitations. Plaintiffs filed responsive memoranda and affidavits on January 7, 1991. Defendant Shultz–Lewis then filed a reply to plaintiffs' response.

After a hearing, The Honorable Roger V. Bradford, Judge of the Porter Superior Court, denied defendants' motions for summary judgment. Defendant Shultz–Lewis then moved to certify the denials of summary judgment for interlocutory appeal. The trial court granted the motions to certify the denials for interlocutory appeal.

The sole issue on appeal is whether the trial court erred in denying defendants' motions for summary judgment which alleged that plaintiffs' claims of personal injury were barred by the statute of limitations. We address no other aspects of the asserted claims.

■ When a moving party asserts the affirmative defense of the statute of limitations and presumptively establishes the defense by placing before the trial court material showing the action was initiated beyond the applicable limitation period, the burden of establishing the existence of material facts in avoidance of the limitations defense shifts to the opponent of the motion. *Conard v. Waugh* (1985), Ind.App., 474 N.E.2d 130, 134. We find that plaintiffs have met their burden.

■ In the case at bar, plaintiffs allege they have been personally injured as a result of sexual abuse that occurred in the 1960's. The relevant statute of limitations for personal injuries, IC 34–1–2–2(1), allows plaintiffs two years "after the cause of action has accrued" to bring an action for personal injuries. However, because the plaintiffs were under the age of 21 when the alleged abusive acts occurred, they were under a legal disability. *See* IC 34–1–67–1(6). Persons under "legal disabilities" when their causes of action accrue may bring suit within two years after the disability is removed. IC 34–1–2–5.

Early this year in *Wehling v. Citizens Nat. Bank* (1992) Ind., 586 N.E.2d 840, a case involving the alleged negligence of a bank in failing to properly place an owner's mailing address in the transfer records when it recorded a deed, our supreme court considered when the statute of limitations would commence to run on tort claims and substantially liberalized the rule. The court determined that the rule it had earlier applied in *Barnes v. A.H. Robins Co., Inc.* (1985) Ind., 476 N.E.2d 84; and *Burks v. Rushmore* (1989) Ind., 534 N.E.2d 1101 should become the general rule in Indiana and that,

> [T]he cause of action of a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered *that an injury had been sustained as a result of the tortious act of another.*

586 N.E.2d at 843, emphasis added.

Over the next three months the court twice reaffirmed this rule; first in *Malachowski v. Bank One* (1992) Ind., 590 N.E.2d 559, 564, (alleged tortious sale of trust assets), and then in *Madlem v. Arko* (1992) Ind., 592 N.E.2d 686, 687, (allegedly forged deed).

A review of the court's decision in *Barnes,* which answered a certified question from the Seventh Circuit Court of Appeals and involved injuries assertedly sustained through use of the Dalkon Shield contraceptive device, clearly evinces the court's intention that the italicized portion of the quotation was intended to include awareness (actual or constructive) of the causative nexus between the injury and the tortious act as one of the elements necessary to commence the running of the statute of limitations.

In the case before us the plaintiffs have asserted both that they had repressed knowledge that a number of the acts had occurred such that they had no memory of the act having happened until 1990, and that while they were aware of other acts and of feelings of guilt, depression, low self-esteem, etc. they were without knowledge of any causative connection between their psychological and personality problems and the alleged molestations until 1990.

We find that under the *Wehling* rule both contentions are sufficient to avoid

summary judgment based upon the application of the statute of limitations. On the record before us what knowledge each might be charged with based upon the exercise of ordinary care remains a disputed question of fact.

It follows that the court did not err in denying summary judgment.

Affirmed.

CHEZEM, J., concurs.

HOFFMAN, J., dissents and files separate opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent. The essence of statutes of limitation is the cessation of otherwise viable claims due to the passage of time. *See Kissel v. Rosenbaum* (1991), Ind.App., 579 N.E.2d 1322, 1326–1327 (discussion of statutes of limitation and statutes of repose). As noted in *Kissel:*

> "Society benefits when claims and causes are laid to rest after having been viable for a reasonable time. When causes of action are extinguished after such time, society generally may continue its business and personal relationships in peace, without worry that some cause of action may arise to haunt it because of some long-forgotten act or omission. This is not only for the convenience of society but also due to necessity. At that point, society is secure and stable."

*Id.* at 1328.

In adopting statutes of limitation or repose, the legislature has determined that, even in the setting where a great harm has been accomplished, the action for recovery will be foreclosed if not reasonably pursued. Here, the plaintiffs knew of at least some of the harmful acts of defendants and were aware of emotional and psychological problems for many years prior to filing their claims.

I agree that our Supreme Court substantially liberalized the rule regarding the commencement of the statute of limitations in tort claims. *Wehling v. Citizens Nat. Bank* (1992), Ind., 586 N.E.2d 840, 842 ("discovery rule," merged with "ascertainment rule," to determine when cause of action accrued, applicable to all tort claims). However, it does not follow that plaintiffs may acknowledge the existence of the tortious conduct, yet, maintain that through due diligence the causes of action could not have been discovered during an approximately 20–year period after they attained the age of majority.

Citing *Wehling,* the court in *Malachowski v. Bank One, Indianapolis* (1992), Ind., 590 N.E.2d 559, 564, reiterated that "a cause of action for a personal injury claim accrues and the statute of limitations begins to run when the plaintiff knew, or in the exercise of ordinary diligence could have discovered, that an injury had been sustained as a result of the tortious act of another." A particularly difficult situation arises when, as here, the resultant damage is primarily psychological rather than physiological. Extension of the "discovery rule" to the circumstances in the present case renders the statute of limitations a nullity. Once a plaintiff acknowledges that harmful conduct occurred and realizes that psychological and emotional problems exist, the statute of limitations cannot be extended indefinitely based upon a subjective assertion that plaintiff was unable to ascertain the nexus between the two.

The court in *Barnes v. A.H. Robins Co., Inc.* (1985), Ind., 476 N.E.2d 84, 86, stated:

> "[t]he problem [of determining when the statute of limitations begins to run] comes about when the act, seemingly innocent, causes changes so subtle and latent that they are not discoverable to the plaintiff until they manifest themselves many years later."

Aside from the obvious differences in actions involving some product which causes physiological damage, the acts here were not innocent and should have, through the exercise of due diligence, placed the plaintiffs on notice that their psychological difficulties were connected to the illicit acts.

Though the defendants may have characterized the abuse as punishment, it is undisputed that the plaintiffs knew that at least some of the tortious acts which caused the harm occurred. Any perceived harshness of the rule requiring the plaintiffs to exercise due diligence in interpreting the harm which occurred while they were minors is ameliorated by the lengthy delay in commencement of the limitations period until the minors attained the age of majority.

The majority opinion notes that application of the *Wehling* rule would allow plaintiffs to survive summary judgment and that "[o]n the record before us what knowledge each might be charged with based upon the exercise of ordinary care remains a disputed question of fact." Op. at 1209. However I would find, based upon the undisputed facts that plaintiffs knew of some of the tortious conduct and knew of psychological and emotional problems well before 1990, that the subjective assertions that they could not in the exercise of ordinary diligence discover the nexus between the harm and the damage are insufficient as a matter of law. Accordingly, I would vote to reverse the denial of summary judgment.